[Cite as *Echols v. Echols*, 2021-Ohio-969.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| SEAN D. ECHOLS | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-45 |
| | : | |
| v. | : | Trial Court Case No. 2016-DR-589 |
| | : | |
| DENAE A. ECHOLS nka GRAY | : | (Appeal from Common Pleas |
| | : | Court – Domestic Relations Division) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of March, 2021.

. . . . . . . . . . .

KERI E. FARLEY, Atty. Reg. No. 0076881, 2689 Commons Boulevard, Suite 100, Dayton, Ohio 45431
    Attorney for Plaintiff-Appellee

REGINA R. RICHARDS, Atty. Reg. No. 0079457, 202 Scioto Street, Urbana, Ohio 43078
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Denae A. Echols, nka Gray ("Gray") appeals from an order of the Clark County Court of Common Pleas, which denied her motions for a change of custody and to find her former husband, Sean D. Echols ("Echols") in contempt. Gray filed a timely notice of appeal on September 10, 2020.

{¶ 2} Echols and Gray were married in West Jordan, Utah on December 20, 2001. The parties are the parents of four children, and they divorced in 2017. By the terms of divorce decree, Echols was designated sole custodian and residential parent of the minor children, and Gray was awarded visitation with the children on alternating weeks from Thursday afternoon at 3:00 p.m. until the following Monday morning at 8:00 a.m.

{¶ 3} During the divorce proceedings, Gray had objected to the magistrate's decision to award sole custody of the children to Echols and to the division of the parties' property. The trial court overruled Gray's objections and adopted the magistrate's decision in its entirety. Gray appealed, but she subsequently filed a motion to voluntarily dismiss of her appeal, which we granted in June 2018.

{¶ 4} Shortly after the appeal as dismissed, on June 27, 2018, Gray filed a motion for change of custody, alleging that a change in circumstances had occurred which required that she be awarded sole custody of the children. Additionally, on March 15, 2019, Gray filed a motion for contempt against Echols in which she alleged "interference with her visitation and access to daycare." A hearing was held before the trial court over several days with respect to Gray's motions on January 15, March 22, April 12, and October 21 and 29, 2019, and on May 11 and 18, 2020. The trial court conducted in camera interviews with the eldest minor child on January 15, 2019, and with the younger children on July 13, 2020.

{¶ 5} On August 12, 2020, the trial court denied Gray's motion for a change of custody, finding that she had failed to establish through clear and convincing evidence that a change in circumstance had occurred requiring a modification. We note that the trial court did not explicitly overrule Gray's motion for contempt in its decision issued on August 12, 2020, but we agree with Echols that the trial court's failure to rule on the motion for contempt constituted an implicit ruling that the motion was overruled. When a trial court does not specifically rule on a motion, the court is presumed to have overruled it. *Reiger v. Reiger*, 2d Dist. Montgomery No. 21784, 2007-Ohio-2366, ¶ 8.

{¶ 6} Gray appeals.

{¶ 7} Gray's first assignment of error is as follows:

IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT NOT TO FIND PLAINTIFF IN CONTEMPT WHEN HE INTERFERED WITH DEFENDANT'S COURT-ORDERED VISITATION AFTER THANKSGIVING 2017 AT 9:00 P.M. TO THE FOLLOWING FRIDAY AT 3:00 P.M. AND HER DAYCARE ACCESS TO THE YOUNGEST CHILD ON 4 APRIL 2018 ABSENT ANY COURT-ORDERED OR STATUTORY RESTRICTIONS.

{¶ 8} Gray contends that the trial court abused its discretion when it failed to hold Echols in contempt for allegedly interfering with her court-ordered visitation on Thanksgiving weekend 2017 and limited her access to their youngest child while the child was attending daycare.

{¶ 9} With respect to the Thanksgiving holiday, the parties' divorce decree stated "that the Thanksgiving parenting time is in accordance with the Standard Order of

Visitation." Divorce Decree, p. 15. The Standard Order of Visitation for the Clark County Court of Common Pleas states in pertinent part:

2. The non-residential parent shall have visitation from 9:00 a.m. to 9:00 p.m. on the following holidays in the left column in even years, and shall have visitation from 9:00 a.m. to 9:00 p.m. in the right column in odd years.

| | |
|---|---|
| January 1 | Memorial Day |
| July 4 | Labor Day |
| Thanksgiving | |

{¶ 10} In November 2017, the parties disagreed regarding with whom the children would be staying overnight on Thanksgiving night and the following day. Gray believed that by the terms of the divorce decree and standard order of visitation, since it was an odd-numbered year, Echols had the children on Thanksgiving and she was entitled to parenting time beginning at 9:00 p.m. on Thanksgiving night through the following day until 3:00 p.m., depending on which parent was to have parenting time that weekend.

{¶ 11} Conversely, Echols testified that he had believed that he was to have the children for the entirety of the Thanksgiving holiday and that the standard order allocated a portion of that day to each parent depending on whether it was an odd- or even-numbered year. As it was 2017, Echols testified that it was his year to have the children on Thanksgiving, and that any time not specifically allotted to Gray by the standard order belonged to him.

{¶ 12} Gray called the police to Echols's residence on Thanksgiving night 2017. One of the officers who arrived, Deputy Nicholas Moody, testified that he read the provisions of the documents that the parties were referring to, namely the divorce decree

and the standard order of visitation, and he agreed with Echols's interpretation of the documents. Accordingly, Echols kept the children for the rest of the night, and Gray was told to leave Echols's residence. Gray initially refused to leave, and Deputy Moody warned her about possible trespassing charges. Gray left but returned the following day, again arguing that the divorce decree and standard order of visitation stated that she should have custody of the children at that time. The police were called to Echols's residence again, and again, the police officers agreed with Echols's interpretation of the relevant documents. Gray left without the children. We note that, at the hearing on the motions at issue in this appeal, the magistrate found that although the divorce decree and standard order of visitation did not specifically state that Gray had been entitled to custody of the children beginning at 9:00 p.m. on Thanksgiving night through the following day until 3:00 p.m., Gray's reasoning was correct, and the parties would act accordingly in future years.

{¶ 13} A trial court has inherent authority to enforce its prior orders through contempt. *Dozer v. Dozer*, 88 Ohio App.3d 296, 302, 623 N.E.2d 1272 (4th Dist.1993). *See also* R.C. 2705.02(A). "A finding of civil contempt requires clear and convincing evidence that the alleged contemnor has failed to comply with the court's prior orders." *Moraine v. Steger Motors, Inc.*, 111 Ohio App.3d 265, 268, 675 N.E.2d 1345 (2d Dist.1996), citing *ConTex, Inc. v. Consol. Technologies, Inc.,* 40 Ohio App.3d 94, 95, 531 N.E.2d 1353 (1st Dist.1988). " 'Clear and convincing evidence' has been defined as 'that measure or degree of proof which is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of fac[t] a firm belief or conviction as

to the facts sought to be established.' " *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 331, 708 N.E.2d 193 (1999), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 14} This court will not reverse a ruling on a contempt motion absent an abuse of discretion by the trial court. *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11, 417 N.E.2d 1249 (1981). An abuse of discretion suggests the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 15} "A party cannot be found in contempt if the contempt charge is premised on a party's failure to obey an order of the court and the order is not clear, definite, and unambiguous and is subject to dual interpretations." *Contos v. Monroe Cty.*, 7th Dist. Monroe No. 04 MO 3, 2004-Ohio-6380, ¶ 15, citing *Chilcote v. Gleason Constr.* Co., 5th Dist. Ashland No. 01COA01397, 2002 WL 205851, *2 (Feb. 6, 2002), *Smith v. Smith*, 10th Dist. Franklin No. 93AP-958, 1994 WL 9055, *3 (Jan. 13, 1994), and *In re Contempt of Gilbert,* 8th Dist. Cuyahoga Nos. 64299 and 64300, 1993 WL 526788, *2 (Dec. 16, 1993). However, "[a]n order is not ambiguous merely because a party misunderstands the order and a misunderstanding of an unambiguous order is not a defense to a contempt proceeding." *Id.*, citing *Chilcote* at *2 and *Gilbert* at *7. "To be ambiguous, the order must be unclear or indefinite and subject to dual interpretations." *Id.*, citing *Chilcote* at *2 and *Gilbert* at *8.

{¶ 16} Although the trial court eventually stated that Gray's interpretation of the disputed provisions of the divorce decree and standard order was correct, the documents did not specifically state that Gray was entitled to parenting time with the children on

Thanksgiving night after 9:00 p.m. until the following day at 3:00 p.m. The disputed provisions were clearly open to dual interpretations, as evidenced by the fact that several police officers agreed with Echols's interpretation on two occasions, as the language in the documents did not expressly allocate parenting time with the children as Gray contended. Therefore, the trial court did not err when it implicitly refused to hold Echols in contempt for failing to abide by the terms of the divorce decree and standard order of visitation.

{¶ 17} Gray next argues that the trial court abused its discretion when it failed to find Echols in contempt for allegedly limiting her access to the youngest child while the child was in daycare. This child attended daycare from the time of the divorce until she began attending kindergarten. During this time, Gray began arriving unannounced at the daycare in order to visit with the child. The daycare teacher found Gray's visits to be disruptive to the rest of the class and complained to the daycare director, Becky Ortiz. Ortiz then contacted the daycare's owner, John Whitacre. Ortiz and Whitacre both testified at the hearing (Whitacre via deposition).

{¶ 18} Ortiz testified that the child would be in a good mood until Gray arrived, and then the child would become upset. Ortiz further testified that, after Gray left, the child's mood would improve. Ortiz testified that Echols did not instruct the daycare to limit Gray's access to the child; rather, Ortiz testified that the daycare had a policy that prohibited unfettered access to any of the children while they were attending the daycare.

{¶ 19} Significantly, the guardian ad litem (GAL) discussed the situation with Ortiz and stated the following in the GAL Report filed on November 9, 2019:

Ms. Ortiz feels that Mother was just considering what Mother wanted and

what was best for Mother as opposed to considering what was best for the child as well as the other children in the classroom. Ms. Ortiz could not understand why Mother did not understand the "disruption" since Mother herself is a teacher.

{¶ 20} Additionally, in his deposition testimony, Whitacre testified that Echols did not direct any daycare employees to limit Gray's access to the child. Whitacre testified that Gray was simply asked to refrain from arriving at the daycare while class was being held because she was disruptive and because Whitacre believed that Gray's visits presented issues with the daycare's licensing requirements. Whitacre testified that this request would apply to anyone and was not directed solely at Gray. Notably, aside from her own testimony that Echols had attempted to limit her daycare access, Gray presented no other evidence that Echols engaged in that behavior. Based on the evidence, the trial court did not abuse its discretion when it failed to find Echols in contempt.

{¶ 21} Gray's first assignment of error is overruled.

{¶ 22} Because they are interrelated, we will discuss Gray's second and third assignments of error together:

IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT NOT TO FIND A CHANGE OF CIRCUMSTANCES WAS SUBSTANTIAL, SUBSTANTIATED, OR OF SUBSTANCE WHERE PLAINTIFF'S CONTINUING CONDUCT OF DENYING COURT-ORDERED VISITATION, DAYCARE/SCHOOL ACCESS, TELEPHONE AND PHYSICAL CONTACT ON EASTER AND AT CHURCH SERVICES, AND REASONABLE RESPONSES TO HER REQUESTS FOR INFORMATION

HAD A MATERIALLY ADVERSE EFFECT ON THE CHILDREN.

IT WAS AN ABUSE OF DISCRETION TO NOT FIND THAT PLAINTIFF'S RECORDING OF THE MINOR CHILDREN IN THE RESIDENCE AS A SUBSTITUTE FOR CHILDCARE, AND OF DEFENDANT AT PARENTAL EXCHANGES OR OTHER INTERACTIONS, AND OF THE PARTIES DURING THE COURT'S RECOMMENDED COUNSELING SESSIONS WAS NOT A SUBSTANTIATED, CONTINUING CHANGE THAT HAD A MATERIALLY ADVERSE EFFECT UPON THE CHILDREN – SIGNIFICANTLY THE ELDEST DAUGHTER WHO PROVIDED THE MAJORITY OF CHILDCARE AFTER THE DECREE UNTIL PLAINTIFF [sic] FILED FOR REALLOCATION.

{¶ 23} Gray argues that the trial court abused its discretion when it found that no change in circumstances had occurred warranting a change of custody.

{¶ 24} " 'The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.   The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.'   A reviewing court will not overturn a custody determination unless the trial court has acted in a manner that is arbitrary, unreasonable, or capricious." *Haynes v. Haynes*, 2d Dist. Montgomery No. 16992, 1998 WL 865040, *2 (Nov. 13, 1998).   "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable."   *Jones v. Jones,* 2019-Ohio-2355, 138 N.E.3d 634, ¶ 16 (2d Dist.)

{¶ 25} R.C. 3109.04(E)(1)(a) provides:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶ 26} The threshold question in this case is whether Gray demonstrated a change in circumstances. Although R.C. 3109.04 does not define a "change in circumstances," Ohio courts have held the phrase pertains to "an event, occurrence, or situation which has a material and adverse effect upon the child." *Pierson v. Gorrell*, 12th Dist. Butler No.

CA 2011-11-216, 2012-Ohio-3878, ¶ 13. "In order to warrant the abrupt disruption of the child's home life, the change in circumstances must be one 'of substance, not a slight or inconsequential change.' " *Id.*, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). In determining whether a "change" has occurred, a trial judge must have wide latitude in considering all the evidence, and the court's decision must not be reversed absent an abuse of discretion. *Id.* at ¶ 10.

{¶ 27} "The clear intent of that statute is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a 'better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment." *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (10th Dist.1982).

{¶ 28} The trial court reasonably concluded that Gray had failed to establish that a change in circumstance had occurred which warranted a change of custody. Initially, we note that any issues regarding Echols's alleged attempts to deny Gray her court-ordered parenting time or access to the child in daycare were addressed in our analysis of the first assignment of error. We also note that the parties divorce decree did not address Easter in regard to parenting time, so Gray cannot establish that Echols deprived her of any parenting time she was supposed to have regarding Easter. The record also did not establish that Echols prevented Gray from speaking to the children on Easter; although Gray attempted to call, no one answered, and when Gray texted with the oldest child later, the child indicated that they had been watching a movie at the time of the missed call.

Gray also provided no evidence that the children were somehow harmed by not having contact with her on Easter, and she did not file a motion to modify visitation in order to alternate years spending Easter with the children.

{¶ 29} The record established that Echols has allowed Gray additional parenting time not required by the divorce decree on snow days and when he traveled for work. The children were also allowed to call Gray from Echols's house phone after school.

{¶ 30} Gray argues that Echols restricted her access to the children when they were at church during his parenting time.   As a member of the Church of Jesus Christ of Latter Day Saints, Echols testified during the hearing that when he brings the children to church during his parenting time, he teaches them to practice reverence during services by sitting still and paying attention.   Echols testified that Gray, who is also a member of the church, has at times come it sit near him and the children during services during his parenting time and, in doing so, undermined his ability to teach them "a reasonable degree of respect for a religious ceremony." Appellee's Brief, p. 12.   Echols testified that Gray does not require the same level of respect from the children during church services, and he simply wants her to sit somewhere else when they are at church during his parenting time.   Echols testified that he does not try to sit next to the children or distract them at church during Gray's visitation time.

{¶ 31} Gray also contends that Echols uses the security cameras that he installed at his residence to spy on the children and as a substitute for hiring a babysitter.   The evidence adduced during the hearings established that Echols had installed several security cameras that were only trained on the exterior entry/exit points of his residence in order to detect any unauthorized entry into his home.   Echols testified that, with the

cameras, he can ensure that the children arrive home from school on time and that they remain there until he returns home from work approximately an hour later. Gray did not present any evidence that the children had a problem with or were harmed in any way by the placement of the cameras. Furthermore, Echols testified that the children attended a "latchkey" program after school during his parenting time in 2018, 2019, and 2020. Accordingly, Gray's argument that the oldest child had been forced to watch the younger children for an hour after school every day during Echols's parenting time was somewhat undermined. Nevertheless, Gray failed to establish that the children had been harmed by their after-school routine while with Echols. Also, the GAL reported that the children were flourishing under the current custody order.

{¶ 32} In her third assignment, Gray argues that the children were somehow harmed by Echols's decision to record his and Gray's interactions during parenting time exchanges and during the court-mandated counseling sessions; however, Gray failed to show that the children had been harmed. There was no evidence that Echols used the cameras to spy on his children or to record them.

{¶ 33} In fact, the record before us establishes that during the pendency of the divorce and thereafter, the children were excelling in school, were involved in extracurricular activities, and maintained friendships outside the family unit. After interviewing the parents, the children, and other interested parties, the GAL reported that the children were "thriving" and recommended that the existing custody order stay in place. We agree with the trial court's conclusion that the evidence presented was insufficient to establish that change in circumstance had occurred requiring a modification of the custody arrangement.

{¶ 34} Gray's second and third assignments of error are overruled.

{¶ 35} Gray's fourth assignment of error is:

IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT NOT TO PROCEED TO A DETERMINATION OF BEST INTERESTS FOR THE ELDEST DAUGHTER WHEN SHE REPORTED TO THE GAL AND THE TRIAL COURT THAT SHE WANTED TO LIVE WITH HER MOTHER AND WAS AT AN AGE OF MATURITY THAT DEMONSTRATED A SUFFICIENT REASONING ABILITY AND NEED FOR PRIVACY, BOTH OF WHICH PLAINTIFF DISREGARDED.

{¶ 36} Gray argues that the trial court abused its discretion when it failed to consider the desire of the oldest child, S.E., to live with Gray. Gray seems to be arguing here that S.E.'s wish to live with Gray, standing alone, constituted a change in circumstance requiring a modification of the custody order.

{¶ 37} The Ohio Supreme Court has explained that a child's maturing may constitute a change in circumstances. *Davis v. Flickinger*, 77 Ohio St.3d 415, 420, 674 N.E.2d 1159 (1997). However, the court held that age alone was not a sufficient factor. *Id*. Although a child's wishes regarding custody, standing alone, are generally not enough to constitute a change in circumstances, the child's wishes are nevertheless relevant to the analysis. *See Rohrbach v. Rohrbach*, 3d Dist. Seneca No. 13-15-14, 2015-Ohio-4728, ¶ 18; *see also McLaughlin v. McLaughlin-Breznenick*, 3d Dist. Logan No. 8-06-06, 2007-Ohio-1087, ¶ 28, citing *Moyer v. Moyer*, 10th Dist. Franklin No. 96APF05-659, 1996 WL 729859 (Dec. 17, 1996). Furthermore, in *Baxter v. Baxter*, 9th Dist. Lorain No. 10CA009927, 2011-Ohio-4034, the Ninth District Court of Appeals explained the

application of a child's wishes to the R.C. 3109.04 analysis:

> [C]onsideration of a child's desire to live with one parent over another typically goes to a determination of what is in the child's best interest, not whether there was a change in circumstances. *See* R.C. 3109.04(B)(1); 3109.04(F)(1)(a). *See, also, Doerfler v. Doerfler*, 9th Dist. No. 06CA0021, 2006-Ohio-6960, at ¶ 34-36 (considering children's wishes to remain with mother under the best interest prong of R.C. 3109.04(E)(1)(a)).

{¶ 38} In *Ashbridge v. Berry*, 2d Dist. Greene No. 2009-CA-83, 2010-Ohio-2914, we identified the proper analysis in determining a child's best interest:

> In determining a child's best interest, section 3109.04 instructs courts to consider all relevant factors, including those factors enumerated in subdivision (F)(1) of the section. See R.C. 3109.04(F). The relevant statutory factors are: the wishes of the parents regarding care; if the court interviewed the child, *the child's wishes expressed to the court*; the child's relations with his parents and others who might significantly affect his best interest; the child's adjustment to his home, school, and community; the mental and physical health of the child and his parents; the parent more likely to facilitate parenting time and visitation; child-support payment issues; and whether one parent lives, or plans to live, outside Ohio. R.C. 3109.04(F)(1).

(Emphasis added.) *Id.* at ¶ 15.

{¶ 39} It is undisputed that S.E. indicated to the GAL and to the trial court that she wished to live with Gray. We note that other than S.E.'s wishes, Gray states that Echols's

"hostility" toward Gray had undermined his relationship with S.E. to the point that a change in circumstance had occurred. Gray makes issue of one occasion in which S.E. needed access to her feminine hygiene products right away but was unable to access them because they were locked in Echols's bathroom. Echols testified that he did not purposely deny S.E. access to her products. Specifically, Echols testified that he threw all the bathroom products in his bathroom after shopping one day and simply forgot those items had been left in there. Echols testified that, once the matter was brought to his attention, he moved the products to a place in the house where S.E. could access them whenever the occasion arose. Gray also takes issue with the fact that Echols waited in the lobby while Gray accompanied S.E. into the examination room for her first gynecological appointment. In our view, these occurrences did not evidence a disregard on Echols's part for S.E.'s privacy. Lastly, Gray states in her brief that Echols stated that he was going to remove the door to S.E.'s room as a form of punishment. Echols testified that he did not recall making such a statement to S.E., but even if he had, it could be found to be a valid, strict form of parenting.

{¶ 40} Additionally, the record established that throughout the divorce and subsequent proceedings, Gray had sought to undermine Echols's relationship with S.E. through inappropriate remarks such as Gray's telling S.E. that she wanted to pick her up but Echols would not allow it. The GAL specifically noted in her reports that Gray had undermined Echols's relationship with S.E. On another occasion, Gray told S.E. that she would take Echols to court over where S.E. attended high school and that Echols was trying to keep S.E. away from Gray. Gray also told S.E. that: regardless of what the children's dentist said, Gray would continue to give the children candy and that Echols

could not control Gray; the children should just run into church to sit with Gray during Echols's parenting time against his wishes; S.E. should disregard her homework assignments despite Echols's rules; and Gray's new husband could buy an IP-address scrambler to circumvent Echols's rules with respect to the home wifi and internet.

**{¶ 41}** The trial did not err when it refused to find a change in circumstances based on S.E.'s expressed desire to live with Gray. None of the allegations made by Gray in her brief established Echols's alleged "hostility" towards Gray. While it is apparent that Echols and Gray do not get along with one another and have different ideas regarding the parenting of their children, Gray failed to establish that it would be in the best interest of S.E. for the trial court to find that a change in circumstances has occurred requiring modification of the current custody order.

**{¶ 42}** Gray's fourth assignment of error is overruled.

**{¶ 43}** Gray's fifth assignment of error is as follows:

> IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT NOT TO PUT A CONFLICT ON THE RECORD AND EITHER APPOINT OR ALLOW THE ELDEST CHILD SEPARATE COUNSEL FROM THE GAL WHEN SHE STATED A WISH TO LIVE WITH HER MOTHER TO THE GAL IN 2018 AND CONFIRMED HER PREFERENCE TO THE TRIAL COURT ON 15 JANUARY 2019.

**{¶ 44}** In her final assignment, Gray argues that the trial court erred when it declined to add S.E. as a third party in the proceedings and to appoint her counsel after S.E. expressed a desire to live with Gray.

**{¶ 45}** Civ.R. 75(B)(2), provides that, "[w]hen it is essential to protect the interests

of a child, the court *may join* the child of the parties as a party defendant and appoint a guardian ad litem and legal counsel, if necessary, for the child." (Emphasis added.) Trial court decisions on whether to appoint counsel for children are reviewed for an abuse of discretion. *In re J.L.R. & M.M.R.*, 4th Dist. Washington No. 08CA17, 2009-Ohio-5812, ¶ 37. In support of her contention that counsel should have been appointed for S.E., Gray cites *Walton v. Walton*, 6th Dist. Wood No. WD-06-066, 2007-Ohio-4325, for the proposition that appointment of separate counsel for minors is proper under Civ.R. 75(B)(2) when the recommendations of the guardian ad litem conflict with the wishes of the children. Nevertheless, even if the trial court arguably had a duty to appoint separate counsel for S.E. because her wishes conflicted with the GAL's recommendation, we would find no abuse of discretion because the trial court heard the evidence and was well-aware of the child's wishes and her conflicted feelings.

{¶ 46} Civ.R. 75(B)(2) does not require the court to appoint counsel for the children in every case where there is conflict between the children's wishes and the guardian ad litem's assessment of their best interest. *O'Malley v. O'Malley*, 8th Dist. Cuyahoga No. 98708, 2013-Ohio-5238, ¶ 51. Here, the trial court found that S.E.'s interest was sufficiently protected by the guardian ad litem and that there was no need to appoint counsel. Furthermore, the GAL filed two reports in which she informed the trial court of S.E.'s wish to live with Gray. The trial court conducted in camera interviews of all the children and was aware that S.E. wanted to live with Gray. Finally, appointed counsel would have unnecessarily added to the expense of this litigation. Under these circumstances, we find no abuse of discretion in the court's decision not to appoint counsel for S.E.

**{¶ 47}** Gray also relies on Sup.R. 48(D)(8), which states: "When a guardian ad litem determines that a conflict exists between the child's best interest and the child's wishes, the guardian ad litem shall, at the earliest practical time, request in writing that the court promptly resolve the conflict by entering appropriate orders." This rule does not stand for the proposition that the court *must* appoint counsel for a child. *O'Malley* at ¶ 52. Furthermore, as this Court has noted:

> * * * "Sup.R. 48 does not have the force of law." *Nolan v. Nolan*, 4th Dist. Scioto No. 11CA3444, 2012-Ohio-3736, ¶ 26. Rather, the rule, like all Superintendence Rules, is an administrative directive. *See Pettit v. Pettit*, 12th Dist. Fayette No. CA2011-08-018, 2012-Ohio-1801, ¶ 12 (saying that the rules are "administrative directives only, and are not intended to function as rules of practice and procedure"). This means that the rule does not create any individual rights. *See id.* (saying that the rules "are purely internal housekeeping rules which are of concern to the judges of the several courts but create no rights in individual defendants"); *Nolan* at ¶ 26 ("Ohio appellate courts have indicated that the Rules of Superintendence are general guidelines for the conduct of the courts and do not create substantive rights in individuals or procedural law."). Accordingly, whether to consider the report of a GAL when the GAL did not fully comply with Sup.R. 48(D) is within a trial court's discretion. * * *

*Corey v. Corey*, 2d Dist. Greene No.2013-CA-73, 2014-Ohio-3258, ¶ 9.

**{¶ 48}** Here, based upon Sup.R. 48(D)(8), Gray argues that the GAL should have filed a report with the trial court informing it of a conflict between the GAL's

recommendation and S.E.'s wishes.   While the GAL could have filed a separate request pursuant to Sup.R. 48(D)(8) asking the trial court to resolve the conflict between the GAL's recommendation and S.E.'s wish to live with Gray, it was ultimately unnecessary because the trial court conducted an in camera interview with S.E. and was made aware of her request in that regard.   Based upon the evidence presented at the hearing, the trial court was well within its discretion in finding that the current custody order should not be disturbed and that Echols should retain sole custody of S.E.; the trial court did not err when it denied Gray's motion to appoint separate counsel for S.E.

{¶ 49} Gray's fifth assignment of error is overruled.

{¶ 50} All of Gray's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Keri E. Farley
Regina R. Richards
Hon. Katrine Lancaster