**[Cite as *In re Z.C.*, 2023-Ohio-963.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | |
|---|---|
| IN RE: Z.C., Z.L.C., J.E. | : |
| | : |
| | :    C.A. No. 29616 |
| | : |
| | :    Trial Court Case Nos. C-2020-004524- |
| | :    0C; G-2020-004525-0O; G-2020- |
| | :    004526-0L; G-2021-000984-0J |
| | : |
| | :    (Appeal from Common Pleas Court- |
| | :    Juvenile Division) |

. . . . . . . . . . .

O P I N I O N

Rendered on March 24, 2023

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ELIZABETH A. ELLIS, Attorney for Appellee

KAREN B. GROSETH, Attorney for Appellant

. . . . . . . . . . . .

LEWIS, J.

**{¶ 1}** J.C. ("Mother") appeals from the Montgomery County Juvenile Court's judgments overruling her objections to the magistrate's decision and awarding legal custody of her three minor children to their maternal great-grandmother ("Grandmother"). For the following reasons, the judgments of the trial court will be affirmed.

    **I.**    **Procedural History**

**{¶ 2}** Mother is the biological mother to the following three children: Z.C. (born in September 2012), Z.L.C. (born in December 2015), and J.E. (born in February 2020).[1] Following J.E.'s birth, Montgomery County Children Services ("MCCS") became involved with the family due to concerns about Mother's mental health. In March 2020, MCCS filed complaints alleging that Z.L.C. and J.E. were dependent, while Z.C. was alleged to be dependent and abused. However, because the complaints could not be adjudicated within the statutory time limits, the original complaints were dismissed without prejudice and new complaints were filed. This matter originated with the filing of new complaints by MCCS on December 8, 2020, alleging that Z.L.C. and J.E. were dependent and Z.C. was dependent and abused. Interim temporary custody was granted to Grandmother, who had previously had interim temporary custody of the three children during the pendency of the prior complaints.

**{¶ 3}** After a full hearing, on March 8, 2021, the magistrate adjudicated all three children dependent. While custody of the children remained with Mother, MCCS was granted protective supervision for a period of six months. Both MCCS and the attorney for the children filed objections to the magistrate's decision. On March 11, 2021, MCCS filed a motion to stay execution of the magistrate's decision pending the outcome of the objections in order for Grandmother to retain temporary custody of the children. The trial court granted MCCS's motion and ordered Grandmother to retain temporary custody of

---

[1] A.E. is the legal father of Z.L.C. and the alleged father of J.E., and he actively participated in this case. However, he did not challenge the trial court's decision, and his participation is not relevant to the issues on appeal. As such, his testimony will not be discussed. L.E., the alleged father of Z.C., did not participate in this case and is not a party to this appeal. Further, in order to protect the privacy of the minors, we will use their initials in this opinion.

the children until a decision on the objections was made.

{¶ 4} On September 24, 2021, the trial court overruled the objections. After agreeing that the children had been properly adjudicated dependent, the trial court affirmed the magistrate's decision to return custody of the children to Mother but to grant MCCS protective supervision for a period of six months.

{¶ 5} In October 2021, MCCS received an additional referral that Mother was locking the children in the closet as punishment for unspecified periods of time and hitting them with hangers. As a result, on November 18, 2021, MCCS filed a motion to award legal custody of all three children to Grandmother, or, in the alternative, to grant temporary custody of the children to Grandmother. On November 23, 2021, the attorney for the children also filed a motion for legal custody of all three children to go to Grandmother, along with a motion for interim temporary custody to Grandmother and a request for an in-camera interview of Z.C. On December 13, 2021, the trial court granted interim temporary custody of the children to Grandmother with supervised visitation to Mother.

{¶ 6} A hearing to determine legal custody was held by a magistrate on February 11, 2022, at which both the ongoing caseworker and Mother testified. The guardian ad litem ("GAL") did not testify at the hearing but filed a report on February 10, 2022, recommending that legal custody of all the children be given to Grandmother.

{¶ 7} The evidence presented at the February 11, 2022 hearing established that MCCS initially became involved with the family due to Mother's mental health issues, for leaving Z.C. in a car for unspecified amounts of time, and for concerns that the children were not being seen medically on a regular basis. However, the most recent referral

occurred in October 2021 when Tairya Fields, the family's ongoing MCCS caseworker, received a text message from Z.C. stating that her mother was being mean; hitting her with hangers and making her sit in a closet. When Fields met with the children in person, the two oldest children confirmed that Mother would lock them in a closet to punish them and hit them with hangers. Although the children could not establish the length of time they were placed in the closet due to their inability to tell time, they stated that Z.L.C. had been in the closet the longest because she fell asleep with her cell phone light on, which ended up burning her because it got too hot. Fields did not observe any physical marks on the children. The children also disclosed that during the night, Mother would not respond to J.E.'s cries so Z.C. would get up to take care of him instead of Mother.

{¶ 8} When Fields confronted Mother about the allegations, Mother initially blamed others. Mother then denied that she had locked the children in the closet as punishment and that she used hangers on them, but then she stated it was not illegal to do those things. As a result of the allegations, the children were placed on a Safety Plan with Grandmother.

{¶ 9} Fields testified that MCCS created a case plan for Mother, which included completing a mental health assessment and following any recommendations; obtaining a parenting psychological assessment and following those recommendations; maintaining housing and income appropriate to care for the needs of the children; meeting with the caseworker on a monthly basis; signing releases of information; and visiting regularly with the children.

{¶ 10} Fields stated that Mother had completed the parenting and psychological

evaluation with Dr. Bromberg in October 2020. Dr. Bromberg recommended Mother be involved in cognitive behavioral therapy ("CBT") and dialectical behavioral therapy. Fields further testified that Mother had completed a mental health assessment through Mahajan Therapeutics in October 2021. Mahajan also recommended that Mother participate in CBT, but Mother decided not to move forward with it because she did not feel she needed those services. According to Fields, Mother had not engaged in CBT as recommended.

{¶ 11} Fields testified that Mother did have housing, but it was very cluttered. The last time Fields had visited Mother's home, it was difficult for her to get inside due to big piles of clothing impeding the doorway and boxes behind the door. Additionally, Mother had televisions in each room and would leave all of them on even though she lived alone. Mother also had cameras in her home, and Fields repeatedly asked Mother not to videotape her during monthly home visits.

{¶ 12} According to Fields, Mother was not employed but was seeking Social Security Disability benefits for her mental health issues. Mother had been diagnosed with paranoid schizophrenia and personality disorder, but Mother claimed she did not need any treatment.

{¶ 13} Mother did sign all requested releases, and she regularly visited with the children for supervised visits in Grandmother's home. Fields had no concerns with the visitations and Mother was appropriate with the children.

{¶ 14} Between October 2021 and the time of the hearing, the children had lived with Grandmother and were doing well. Fields testified that the children were happy,

they felt comfortable being at Grandmother's home, their needs were being met, and there were no safety concerns.

{¶ 15} When asked to explain the basis of MCCS's request that legal custody of the three children be given to Grandmother, Fields explained that the children had lived on and off with Grandmother their entire lives. The children had previously been in Grandmother's care as a result of the family's involvement with Greene County Children Services, and the children were comfortable with her. Grandmother was able to meet all of their needs and make sure they had a safe and appropriate home. The children did very well in Grandmother's care, and she ensured that they attended school and went to regular doctor's appointments. This included hospital appointments for Z.C. every three months for sickle cell anemia and Z.L.C.'s speech therapy through Dayton Children's Hospital.

{¶ 16} Mother testified on her own behalf. Mother denied ever locking her children in the closet or hitting them with hangers and claimed her daughters were lying. Mother explained that she had been sexually assaulted in a closet when she was five years old and would never lock her children in the closet for punishment.

{¶ 17} Mother believed that someone was putting ideas into the children's heads, because they were jealous, and that Grandmother was seeking legal custody due to jealousy. Mother testified that she had Section 8 housing and had plenty of space in her home. According to Mother, she had baby-proofed the house, such as unplugging her microwave when it was not in use. Mother claimed that she and the children loved each other and had the best time together. She stated that Fields had lied about the clutter at

her home and not being able to come through the front door.

{¶ 18} Mother admitted that she had been diagnosed with schizophrenia and had been engaged in mental health treatment with TCN when she was involved with Greene County Children Services. She also stated that she had gone to Mahajan for an assessment and had been told that she did not need any services for CBT, but that she should be seen for social anxiety disorder. Mother claimed to have met with someone once a week, but she was no longer engaged in mental health services at the time of the hearing because they closed her case. Mother denied that she had asked to have her case closed at Mahajan.

{¶ 19} Mother stated she was not employed but had applied for Social Security Disability benefits and had a court date scheduled in a few weeks. She also stated that she received income from the child tax credit from the stimulus package and child support, and she qualified for welfare, food stamps, and medical. According to Mother, her mental health condition was bad enough that she could not work, but not bad enough to require additional treatment.

{¶ 20} Although the GAL did not testify at the hearing, the GAL's report was filed on February 10, 2022, recommending that legal custody of all the children be given to Grandmother. According to the GAL, Grandmother's home was safe and appropriate, and the children appeared very comfortable there. The children were bonded with Grandmother, and she had the resources and willingness to care for the children. Both Z.C. and Z.L.C. indicated they would like to remain with Grandmother. Although J.E. was too young to state his wishes, the GAL observed that he appeared very bonded with

Grandmother.

{¶ 21} At the end of the hearing, counsel for the children withdrew the request for an in-camera examination.

{¶ 22} The magistrate issued a decision on March 7, 2022, granting legal custody of all three children to Grandmother, with supervised visitation granted to Mother. Mother timely filed objections. While the objections were pending, Mother filed a motion for leave to supplement evidence pursuant to Juv.R. 40(D)(4)(d), because "Mother could not, with reasonable diligence, have produced the evidence for consideration by the magistrate because her court-appointed attorney did not present the evidence on her behalf[.]" Amended Motion for Leave to File Supplemental Evidence, June 30, 2022. That same day, Mother filed supplemental objections, which included the proposed evidence Mother wished the court to consider that had not been presented to the magistrate. This evidence included both unsworn testimonial evidence and documentary exhibits. MCCS opposed Mother's motion to supplement the record and her objections.

{¶ 23} On September 8, 2022, the trial court denied Mother's motion to consider additional evidence and overruled Mother's objections to the magistrate's decision. The trial court granted legal custody of all three children to Grandmother with supervised visitation to Mother. Mother timely appealed.

{¶ 24} Mother raises two assignments of error on appeal. First, Mother contends the trial court erred in denying her request to consider additional evidence before ruling on her objection to the magistrate's decision. Second, Mother argues that the trial court's

decision should be reversed, because it was not in the children's best interest to grant legal custody of the children to Grandmother.

## II. Supplemental Evidence

{¶ 25} Under her first assignment of error, Mother contends the trial court abused its discretion in refusing to allow her to present additional evidence in conjunction with her objections to the magistrate's decision. After Mother objected to the magistrate's decision, she requested to supplement the record with nine statements to rebut testimony that was said during the hearing. Additionally, Mother requested to supplement the record with six exhibits that were not submitted during the hearing. The trial court denied Mother's request to supplement the record, finding that the additional statements did not constitute additional evidence that may be admitted as contemplated in Juv.R. 40(D)(4)(d). Further, the trial court found that all of the proposed exhibits were in existence at the time of the February 11, 2022 hearing, some of which were discussed on the record, but were not offered as exhibits. Because the evidence was such that it could have been produced with reasonable diligence prior to the hearing before the magistrate, the trial court declined to consider the supplemental exhibits. We agree with the trial court.

{¶ 26} Pursuant to Juv.R. 40(D)(4)(d), if timely objections to a magistrate's decision are filed, the juvenile court must "undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party

could not, with reasonable diligence, have produced that evidence for consideration by the magistrate." "Juv.R. 40 contemplates that new events may arise or be discovered between the time of a magistrate's decision and a trial judge's final judgment, and the rule provides a mechanism for the introduction of such evidence in a timely manner." *In re A.S.*, 9th Dist. Summit No. 26462, 2013-Ohio-1975, ¶ 14, citing Juv.R. 40(D)(4)(b) and (d). However, the plain language of the rule makes it clear that "unless the objecting party can show that the additional evidence was *not producible*, even with reasonable diligence, prior to the magistrate's hearing, the trial court can refuse to hear it. To this extent, the court is only obligated to hear the additional evidence when it could not be discovered prior to the magistrate's hearing." (Emphasis sic.) *In re M.L.E.*, 11th Dist. Portage Nos. 2015-P-0007, 2015-P-0010, 2015-P-0011, 2015-P-0012, 2015-P-0013, 2015-P-0014, 2015-P-0015, 2015-P-0016, 2015-Ohio-3647, ¶ 47.

{¶ 27} We review a trial court's decision to hear or not hear additional evidence after the parties have objected to the magistrate's decision under an abuse of discretion standard. *Kolano v. Vega*, 2016-Ohio-356, 58 N.E.3d 546, ¶ 23 (5th Dist.) The term "abuse of discretion" implies that the juvenile court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 28} In this case, Mother was on notice that information relating to her mental health, her case plan, and the allegations in the complaint would be addressed during the hearing. The nine statements that Mother wished to include were statements made to contradict testimony that was presented at the hearing and to which Mother could have

testified at the hearing but did not. The statements related to information that was known to Mother prior to the hearing. We agree with the trial court that these statements did not constitute additional evidence that could not, with reasonable diligence, have been produced during the custody hearing.

{¶ 29} Likewise, the six exhibits Mother asked to supplement into the record were documents all produced prior to November 2021 regarding her mental health assessments, treatments, and medications. The custody hearing occurred in February 2022, several months after the latest document was created and several years after some of the events identified in the documents. This is not to say that a document created prior to a custody hearing could never be considered additional evidence in accordance with Juv.R. 40(D)(4)(d). However, in this case, the documents Mother wished to add were clearly known to her and could have been produced with reasonable diligence at the custody hearing.

{¶ 30} Notably, Mother never alleged that she could not have obtained the evidence prior to the hearing; rather, she indicated that they were not admitted "because her appointed lawyer did not present it in court." Mother's Supplemental Objections, June 30, 2022, p. 3. Several of the documents were discussed during the hearing, although not admitted. For example, both parties discussed Dr. Bromberg's parenting and psychological evaluation of Mother, which was completed in October 2020 and which Mother wished to enter as Exhibit #4. Likewise, Mother discussed letters she had received from Mahajan Therapeutics during her testimony, which Mother wished to enter as Exhibits #1 and 2. It is clear from the record that Mother had access to these

documents prior to the custody hearing and could have introduced them at that time. Juv.R. 40(D)(4)(d) is not designed as a procedure to avoid the effects of trial counsel's decision not to submit certain evidence during the hearing. *In re M.L.E.*, 2015-Ohio-3647, at ¶ 48. We cannot conclude under these circumstances that the trial court abused its discretion in denying Mother's request to supplement the record. Mother's first assignment of error is overruled.

### III. Best Interests Analysis

{¶ 31} In her second assignment of error, Mother alleges that the trial court abused its discretion in granting legal custody to Grandmother, because there was insufficient evidence to demonstrate that doing so was in the children's best interest. We disagree.

### a. Legal Custody Standards

{¶ 32} "R.C. 2151.353(F)(1) and (2) and R.C. 2151.42(A) and (B) govern the modification or termination of dispositional orders involving abused, neglected, or dependent children." *In re I.E.*, 2d Dist. Montgomery No. 28646, 2020-Ohio-3477, ¶ 10. The juvenile court retains continuing jurisdiction over any child for whom the court has issued an order of disposition until certain specified events occur, such as the child reaching the age of 18 years or is adopted. *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Court of Common Pleas, Probate Div.*, 150 Ohio St.3d 230, 2016-Ohio-7382, 81 N.E.3d 380, ¶ 22, citing R.C. 2151.353(F)(1). A children's services agency, or any party other than a parent whose parental rights have been terminated, may file a request with the court to modify or terminate any order of disposition issued under R.C. 2151.353(A) at any time. R.C. 2151.353(F)(2). Upon such a motion, the trial court shall

hold a hearing as if it were the original dispositional hearing.   *Id.*

{¶ 33} "A juvenile court may award legal custody of a child to an individual if the court finds, by a preponderance of the evidence, that legal custody is in the best interest of the child."   *In re C.B.*, 2d Dist. Montgomery No. 28113, 2019-Ohio-890, ¶ 17, citing *In re M.O.*, 2d Dist. Montgomery No. 26457, 2015-Ohio-2430, ¶ 7.   "Preponderance of the evidence simply means "evidence which is of a greater weight or more convincing than the evidence which is offered in opposition to it.' "   *In re Starks*, 2d Dist. Darke No. 1646, 2005-Ohio-1912, ¶ 15, quoting *Black's Law Dictionary* (6th Ed.1998) 1182.

{¶ 34} "When a juvenile court makes a custody determination under R.C. 2151.353, it must do so in accordance with the 'best interest of the child' standard set forth in R.C. 3109.04(F)(1)."   *In re D.S.*, 2d Dist. Clark No. 2013-CA-51, 2014-Ohio-2444, ¶ 9.   The best interest of the child standard requires the trial court's consideration of such factors as "the parents' wishes; the child's wishes, if the court has interviewed the child; the child's interaction with parents, siblings, and others who may significantly affect the child's best interests; adjustment of the child to home, school, and community; and the mental and physical health of all involved persons."   *In re C.R.*, 2d Dist. Montgomery No. 28842, 2020-Ohio-5208, ¶ 12, citing *In re A.F.*, 2018-Ohio-310, 103 N.E.3d 1260, ¶ 52 (2d Dist.).   However, "R.C. 3109.04(F)(1) does not limit courts to just the listed factors; courts are permitted to consider 'all relevant factors.' " *In re C.N., K.N. and K.N.*, 2d Dist. Montgomery No. 27119, 2016-Ohio-7322, ¶ 51.   Thus, while some of the R.C. 3109.04(F)(1) factors are similar to the best interest factors in R.C. 2151.414(D) that govern permanent custody motions, courts sometimes apply both provisions when

considering legal custody. *In re M.W.*, 2d Dist. Montgomery No. 29413, 2022-Ohio-2054, ¶ 13. R.C. 2151.414(D) factors include, but are not limited to: "(1) the interaction and interrelationship of the child with the child's parents, relatives, foster parents and any other person who may significantly affect the child; (2) the wishes of the child; (3) the custodial history of the child * * *; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors in R.C. 2151.414(E)(7) through (11) are applicable." *In re M.R.*, 2d Dist. Greene No. 2010-CA-64, 2011-Ohio-3733, ¶ 26. "Under the best-interest test, no single factor is controlling, and the weight to be given to any factor lies within the trial court's discretion." *In re L.L.*, 1st Dist. Hamilton No. C-200058, 2020-Ohio-5609, ¶ 8.

{¶ 35} Appellate courts apply an abuse of discretion standard when reviewing a trial court's decision on a motion for legal custody. *In re L.H.*, 2021-Ohio-3521, 179 N.E.3d 214, ¶ 21 (2d Dist.). "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

### b. Best Interest of Z.C., Z.L.C., and J.E.

{¶ 36} Having affirmed the trial court's decision rejecting Mother's request to supplement the record, we likewise will not consider Mother's supplemental evidence in determining whether the trial court abused its discretion in overruling the magistrate's decision and granting Grandmother legal custody of the children.

{¶ 37} On appeal, Mother contends the trial court erred in granting legal custody to Grandmother because there was insufficient evidence to find that it was in the best interest of the children for legal custody to go to Grandmother. Specifically, Mother contends she had substantially completed her case plan, MCCS's concerns regarding the alleged abuse were not supported by the evidence, Mother's mental health concerns were not supported by the record, and there was insufficient testimony regarding the interrelationships of the parties.

{¶ 38} Mother first points out that she was able to complete most of her case plan objectives. While this may have been true, it was not dispositive. Case plan compliance is not the only consideration in a legal-custody determination:

> A parent's case-plan compliance is relevant, of course, to the best-interest determination, but it is not dispositive. *In re T.S.*, 2017-Ohio-482, 85 N.E.3d 225, ¶ 13 (2d Dist.). Satisfying case-plan objectives is a means to an end, not an end unto itself. *Id.* at ¶ 12. The statutory best-interest factors may justify an award of legal custody to someone other than a parent, or even the termination of parental rights, despite a parent's completion of all case-plan objectives. *Id.* This is so because the best-interest factors encompass much more than the parent's case-plan objectives, and they do so from the perspective of the child's particular needs. In short, the focus of a best-interest analysis is on the child, not the parent.

*In re A.K.*, 2d Dist. Montgomery No. 27575, 2017-Ohio-8100, ¶ 11.

{¶ 39} The trial court found that Mother wished to have custody of the children returned to her, that she visited with the children consistently, and that there were no concerns reported with the supervised visitations. More importantly, however, the trial court observed, and the record reflects, that Mother never sought the recommended mental health treatment. Dr. Bromberg and Mahajan Therapeutics recommended that Mother complete CBT. But Mother believed that she had successfully completed mental health treatment while in Greene County and insisted she no longer needed it. Mother admitted she had been diagnosed with paranoid schizophrenia and had applied for Social Security Disability benefits because she was unable to work due to her mental health. Nevertheless, Mother denied needing any additional mental health treatment, contrary to the recommendations of the professionals.

{¶ 40} The trial court also considered that throughout the children's lifetimes, they had been removed from Mother's care and reunified multiple times. The record reflects that Grandmother had been given temporary custody of the two oldest children by Greene County Children Services for two years prior to MCCS's involvement before returning them to Mother's care. During the pendency of this case, Grandmother had interim temporary custody of all three children from March 2020, when the original complaints were filed, until they were briefly returned to Mother in September 2021. However, the children only remained with Mother for a short time before interim temporary custody was returned to Grandmother in November 2021 following the new allegations. Significantly, J.E. had lived with Grandmother the majority of his life. Each time the children were removed, they were placed with Grandmother, who was willing and able to care for them.

While in Grandmother's care, the children were well adjusted and well cared for. The evidence demonstrated that the children had a strong bond with Grandmother, they were obtaining the educational and medical attention they needed, all of their needs were being met, and they were in a safe, stable environment. The two older children were able to communicate their desire to remain with Grandmother, and all three were bonded with her. While this evidence was not necessarily related to Mother's case plan objectives, it was certainly relevant to a consideration of the best interests of the children and weighed heavily in favor of granting legal custody to Grandmother.

{¶ 41} Mother further argues that there was insufficient evidence to support MCCS's concerns regarding physical abuse, primarily because she denied the allegations and no physical injuries were observed. It does not appear the trial court relied heavily on this evidence but rather considered the allegations in the context of the entire case, particularly as related to Mother's inability to maintain custody of her children long-term and her mental health issues. Nevertheless, there was evidence in the record to support MCCS's concerns of inappropriate discipline. Fields testified that during the brief time that the children were returned to Mother's care, Z.C. and Z.T.C. informed Fields that Mother would lock them in the closet and hit them with hangers. Although they were unable to determine how long they were kept in the closet, Z.T.C. was locked in a closet long enough to fall asleep and get burned from the light of her cell phone getting too hot. The children also informed Fields that Mother failed to respond to J.E.'s cries during the night, and Z.C. would get up and care for J.E. instead of Mother. Though Mother denied these allegations, it was not improper for the trial court to consider this testimony to

support a finding that legal custody of the children to Grandmother was in the best interest of the children.

{¶ 42} Lastly, Mother contends that there was insufficient testimony regarding the interrelationships of the parties to grant legal custody to Grandmother. Mother acknowledges that the two eldest children disclosed to the GAL that they wished to remain with Grandmother, but she claims there was nothing further placed on the record to indicate that she lacked a relationship with her children. However, as noted above, the focus of a best interest hearing is on the child, not the parent. In this case, the trial court found that the two eldest children were able to disclose their preference to stay with Grandmother, whom by all indications was able to care and provide for the children's needs. Grandmother had frequently been the primary caretaker for the children throughout their lives and the children were comfortable and happy living with Grandmother. Fields testified that while Z.L.C. was temporarily in Mother's custody, she claimed she was only with her Mother to make her happy but that she did not really want to be there. Neither MCCS nor the GAL had concerns with Grandmother's home or her ability to care for the children, and the children appeared to be well-adjusted and well cared for in Grandmother's home. Accordingly, Mother's contention is without merit.

{¶ 43} On the record before us, we cannot find that awarding legal custody of the three children to Grandmother, with Mother retaining visitation rights, was an abuse of the trial court's discretion or that such a disposition was not in the children's best interest. Mother's second assignment of error is overruled.

## IV. Conclusion

{¶ 44} Having overruled each of Mother's assignments of error, the judgments of the trial court are affirmed.

. . . . . . . . . . . . .

EPLEY, J. and HUFFMAN, J., concur.