[Cite as *In re K.K.*, 2023-Ohio-2083.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

IN THE MATTER OF: K.K., K.K., K.K.   :
  :
  :   C.A. No. 2023-CA-2
  :
  :   Trial Court Case No. 21930015;
  :   21930016; 21930017
  :
  :   (Appeal from Common Pleas Court-
  :   Juvenile Division)
  :

. . . . . . . . . . .

O P I N I O N

Rendered on June 23, 2023

. . . . . . . . . . .

KELLY M. SCHROEDER, Attorney for Appellee

ALEXANDER S. PENDL, Attorney for Appellant

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Father appeals from the judgments of the juvenile court that continued the grant of temporary custody of his three children to the Darke County Children Services Unit ("CSU"). Father argues that the juvenile court erred in taking judicial notice of prior proceedings involving two of Mother's other children and in considering evidence that was not presented at the adjudicatory hearing. He argues that the dependency adjudications

were not supported by sufficient evidence. For the following reasons, we agree with Father. The judgments of the trial court are reversed.

## Facts and Procedural History

{¶ 2} On September 23, 2022, CSU filed a complaint alleging that the children were dependent and lacked adequate parental care due to the mental or physical condition of the children's parents. CSU also filed a motion for temporary disposition ex parte. The trial court held a shelter care hearing on September 26, 2022, at which Father was unrepresented and the testimony of CSU's witnesses was not subject to cross-examination. The court entered a denial of the allegations in the complaint on Father's behalf and ordered the children to remain in the temporary custody of CSU.

{¶ 3} An adjudicatory hearing occurred on December 12, 2022. Greenville Chief of Police Eric Roberts and Teresa Maples, a social worker for CSU, were the only witnesses to testify. On December 14, 2022, the court issued a judgment entry finding that CSU had provided clear and convincing evidence establishing that the children were dependent. In its judgment, the court took judicial notice of two prior dependency cases involving the children herein and two other children of Mother, as well as a decision by this Court affirming the grant of permanent custody of Mother's two other children to CSU.

{¶ 4} A dispositional hearing occurred on January 6, 2023. On January 10, 2023, the court issued a judgment entry finding that the children should remain in the temporary custody of CSU and placing them in the care of a relative.

## Assignments of Error and Analysis

{¶ 5} Father asserts two assignments of error, which we will consider together:

THE TRIAL COURT ERRED BY CONSIDERING EVIDENCE NOT PRESENTED AT THE ADJUDICATORY HEARING IN MAKING A FINDING OF DEPENDENCY,

THE DEPENDENCY ADJUDICATIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶ 6} In his first assignment of error, Father argues that there was no evidence to support the trial court's determination in its December 14, 2022 judgment entry that Father was in jail and unable to care for his children when the September 23, 2022 complaint was filed. He contends that there was also no evidence to support the court's determination that there was no parent immediately available to provide care for the children at that time. According to Father, the only explanation for the court's findings is that it considered evidence that was not presented at the adjudicatory hearing, such as testimony from the shelter care hearing. Finally, Father argues that the court erred by taking judicial notice of the two prior dependency cases involving the children herein and two of Mother's other children.

{¶ 7} CSU responds that the evidence to which Father objects was available to the court from previous proceedings in this case, which was in the same docket and had been heard by the same judge. Mother responds that the court did not err in considering evidence outside of the adjudicatory hearing, as a majority of the evidence was taken "from the proceedings in the immediate case," and that the police chief's testimony supported the inference that Father had been incarcerated when the complaint was filed.

{¶ 8} Father argues that the court relied upon evidence not in the record to support

its conclusion that he had been incarcerated and unable to care for his children when the complaint was filed. Father asserts that, although the dependency complaint alleged that he had experienced two psychotic episodes, had been hospitalized at Haven Behavioral Health Hospital, and had been diagnosed with bipolar disorder, no evidence was presented at the adjudicatory hearing relating to Father's mental or physical condition at the time of the hearing. Father notes that the trial court made no mention of his mental or physical condition in its December 14, 2022 entry. He asserts that no evidence was presented that the children lacked adequate parental care. Father argues that the fact that he may have been incarcerated on felony charges was insufficient to establish the children's dependency. He asserts that his due process rights were violated by the court's dependency findings "on grounds neither alleged in the Complaint nor argued at the Adjudicatory Hearing."

{¶ 9} We begin our review by noting that the "United States Supreme Court has stated that the right to raise one's children is an 'essential' and 'basic civil right.' " (Citations omitted.) *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). This legal right is "protected by law and, thus, comes within the purview of a 'substantial right.' " *Id.* Based upon these principles, the Supreme Court of Ohio has concluded that a parent " 'must be afforded every procedural and substantive protection the law allows.' " (Citation omitted.) *In re Hayes,* 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997).

{¶ 10} R.C. 2151.35(A)(1) provides: "If the court *at the adjudicatory hearing* finds from clear and convincing evidence that the child is an abused, neglected, or dependent child, the court shall proceed * * * to hold a dispositional hearing * * *." (Emphasis

added.) Dependency is governed by R.C. 2151.04. CSU alleged in its complaint that the children were dependent pursuant to R.C. 2151.04(B), which defines a dependent child as one "[w]ho lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian." "In proving that a child is dependent under R.C. 2151.04(B), the evidence must demonstrate not only that the parent had a mental incapacity, but also that the child lacked adequate care because of the mental incapacity." *In re Z.P.*, 5th Dist. Stark No. 2008CA00209, 2009-Ohio-378, ¶ 18, citing *In re Pierce*, 5th Dist. Muskingum No. CT2008-0019, 2008-Ohio-6716, ¶ 17. " 'Adequate parental care' means the provision by a child's parent or parents * * * of adequate food, clothing, and shelter to ensure the child's health and physical safety and the provision by a child's parent or parents of specialized services warranted by the child's physical or mental needs." R.C. 2151.011(B)(1).

{¶ 11} "When this court reviews an adjudication to determine whether the judgment is supported by clear and convincing evidence, we must determine whether the trier of fact had sufficient evidence before it to satisfy the clear and convincing degree of proof." *In re Z.P.* at ¶ 16, citing *In re Christian*, 4th Dist. Athens No. 04CA10, 2004-Ohio-3146. "Clear and convincing evidence is that which produces 'in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.' " (Citations omitted.) *Id.*

{¶ 12} The dependency complaint contained the following allegations: On September 14, 2022, Father had a psychotic episode and threatened to harm the children; he was subsequently admitted to Haven Behavioral Health Hospital, where he was diagnosed with bipolar disorder. After receiving treatment, he was discharged on

September 19, 2022. Following his discharge, CSU was engaged with the family and monitored the children. On September 22, 2022, Father appeared to have a second psychotic episode while driving, resulting in a police pursuit and felonious assault charges. The children were not in the vehicle during the pursuit. On the date of the complaint, Father was incarcerated at the Darke County Jail, and the children were in temporary CSU custody "due to the obvious mental health issues" of Father and safety concerns for the children. Regarding Mother, the complaint provided that CSU was "not required to make reasonable efforts to reunify the children with her" in accordance with R.C. 2151.419(A)(2)(e).[1]

{¶ 13} At the adjudicatory hearing, Chief Roberts testified that he had been aware of the "situation" with Father since September 14, 2022, and that he (Roberts) became "actively involved" when an Amber Alert was issued because the children were absent from school. He stated that many jurisdictions and states had been involved and the FBI had been contacted. On September 22, 2022, Roberts was also involved in a "normal speed pursuit" of Father. In the course of the pursuit, a passenger, B.K., got out of Father's vehicle; Roberts picked up B.K. and transported her to the police station to see if she needed medical attention. Roberts did not testify regarding B.K.'s relationship to Father. Roberts then proceeded to Wayne Hospital, where he observed extensive

---

[1] "If any of the following apply, the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal the child from the child's home, and return the child to the child's home: * * * * (e) The parent from whom the child was removed has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections." R.C. 2151.419(A)(2)(e).

damage to two police cruisers and to the entrance to the hospital emergency room. Photos of a "totaled" police vehicle and of the damaged hospital entrance were admitted into evidence. Roberts testified that he advised a lieutenant to "make sure the cruiser's videos were downloaded for complete review."

{¶ 14} By the time Roberts arrived at the hospital, Father had already been arrested and taken from the scene. Roberts subsequently authorized the removal of the children from Father's care on "the basis since the 14th of September, we had been dealing with this." He stated that officers had responded to Father's home on September 14, 2022. Roberts was aware that Father had previously been hospitalized. Two police reports had been prepared, but Roberts did not recall if he had prepared one. Roberts testified that the "totality of the circumstances and [Father's] behavior on the 22nd was enough for me" to order the removal of the children. Father had been charged "with the pursuit and the felonious assault upon the officers," and Roberts was not aware whether the charges had been resolved at the time of the hearing. Multiple objections were sustained in the course of Chief Robert's testimony for lack of personal knowledge.

{¶ 15} Caseworker Maples testified that, by the time CSU learned of the vehicular pursuit of Father, she already had a dependency case open based upon concerns about the children from September 14, 2022. She stated that the children had not been removed from the home then. At the time of the incident on September 22, 2022, CSU was working with Father regarding prior incidents involving the children. Upon learning of the police pursuit, Maples contacted Roberts to check on the children's welfare. Maples executed the removal of the children from the home.

{¶ 16} Officer Alan Smith was called to testify at the hearing, but both Father and Mother objected because Smith had not been on the witness list. CSU withdrew the witness. Father did not cross-examine either of CSU's witnesses., and neither Mother nor Father called any witnesses.

{¶ 17} In its December 14, 2022 entry, the trial court found that CSU's presentation of evidence was "unnecessarily limited and lacking in detail." The court found that Roberts and Maples had "frequently repeated inadmissible hearsay which prompted proper objections," and that evidence and documents referred to during the testimony, such as police reports and cruiser camera footage, were not offered. The court noted that a certified copy of Father's charges could have easily been presented but was not. The court further noted that the September 14, 2022 investigation and the Amber Alert were mentioned without any elaboration.

{¶ 18} Despite acknowledging the deficiencies in the evidence, the court concluded:

These shortcomings, however, do not eliminate the basic facts in place when the Complaint was filed on September 23, 2022. As of September 14, 2022, there were concerns sufficient for CSU to open a Dependency investigation. This coincided with work and investigation by the Greenville Police Department, which at one point included the issuance of an Amber Alert. On September 22, 2022, the Father was arrested for Felonious Assault on a Police Officer. Chief Roberts made the decision to remove the children. When the complaint was filed the next day, Father

was still in jail and unable in any way to care for his children. For the reasons described above, CSU was reasonable in not considering Mother as an immediate placement. The children had no parent immediately available to provide care at that point in time. Based upon these circumstances and the evidence presented, the Court finds that CSU has met its burden of providing clear and convincing evidence establishing the children as Dependent as of the time of the filing of the Complaint.

{¶ 19} We agree with Father that the court's dependency determination should have been limited to consideration of the evidence presented at the adjudicatory hearing. We also conclude that the record lacks sufficient credible evidence to support a finding of dependency by clear and convincing evidence. Regarding Father's alleged mental incapacity, the record fails to support the allegations that Father experienced two "psychotic episodes," threatened his children, was treated at a behavioral health hospital, and was diagnosed with bipolar disorder. Chief Roberts testified that Father had been previously hospitalized, but no further details were provided, such as where he was hospitalized, his diagnosis and prognosis, and whether any medications were prescribed. While Father allegedly caused extensive damage to police vehicles and the hospital following the police pursuit, there was no testimony regarding his alleged mental incapacity on the date of incident. Roberts did not interact with Father that day beyond pursuing his vehicle, because Father had been arrested and removed by the time Roberts arrived. Without discounting the seriousness of the issuance of the Amber Alert, the fact of its issuance was not probative of Father's alleged mental incapacity. There was no

testimony regarding Father's physical condition before or after the incident on September 22, 2022. Maples testified that CSU had an open file on Father based on concerns from September 14, 2022, without any specific testimony regarding what had occurred on that date. Roberts also provided no specific testimony about the alleged initial "psychotic episode" on that date. There was no evidence presented that the children were not provided adequate food, clothing, and shelter to ensure their health and safety as a result of Father's mental incapacity. There was no testimony regarding whether anyone else resided in the children's home or its condition, and there was no evidence presented regarding Mother. Given the deficiencies in the evidence as acknowledged by the trial court, we conclude that the court erred in adjudicating the children dependent.

{¶ 20} Because CSU failed to establish that Father had a mental incapacity and that the children lacked proper care as a result of that mental incapacity, CSU failed to establish dependency under R.C. 2151.04(B) by clear and convincing evidence. Father's two assignments of error are sustained.

{¶ 21} We need not address Father's argument related to judicial notice, given our disposition of Father's assignments of error.

{¶ 22} The judgments of the trial court are reversed.

. . . . . . . . . . . . .

WELBAUM, P.J. and TUCKER, J., concur.