[Cite as *In re J.B.*, 2024-Ohio-680.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | |
|---|---|
| IN RE: J.B. and X.B. | : |
| | : |
| | :   C.A. No. 29921 |
| | : |
| | :   Trial Court Case Nos. G-2015-006026-0Z; G-2018-005753-0Q |
| | : |
| | :   (Appeal from Common Pleas Court-Juvenile Division) |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on February 23, 2024

. . . . . . . . . . .

DAVID J. FIERST, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee MCCS

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Appellant-Mother appeals from judgments of the Montgomery County Court of Common Pleas, Juvenile Division, granting sole legal custody of her children, J.B. and X.B., to their maternal grandmother ("Grandmother"). For the reasons outlined below, we will affirm the judgments of the trial court.

**I.      Facts and Procedural History**

{¶ 2} On September 29, 2015, Montgomery County Department of Job and Family Services Children Services Division ("MCCS") filed an abuse and dependency complaint as to J.B.[1] On January 5, 2016, J.B. was adjudicated dependent and was placed in the temporary custody of the maternal grandparents; later, J.B. was temporarily reunified with Mother.

{¶ 3} On November 21, 2018, MCCS filed a dependency complaint as to X.B. and requested that both J.B. and X.B. be placed in the temporary custody of the maternal grandparents. The maternal grandparents were granted interim temporary custody. On January 25, 2019, X.B. was adjudicated dependent and, on April 30, 2019, the maternal grandparents were granted legal custody of both children.   Mother did not appeal from the order granting legal custody to the maternal grandparents.

{¶ 4} In early 2020, the maternal grandparents separated, and they divorced in 2021. In November 2020, Mother filed a motion for change of custody, which she later withdrew, and she then filed another motion for change of custody in May 2021. Grandmother filed her own motion for change of custody and a motion to amend Mother's parenting time. Grandmother, who already shared legal custody of the children with the maternal grandfather, sought to be named sole legal custodian of the children, as she and maternal grandfather had divorced but she remained the primary caregiver and financial supporter of the children.

{¶ 5} On November 3, 2022, a hearing was held on the pending motions.   During the hearing, Mother testified that J.B. had lived with her from birth to eight months of age

---

[1] We will refer to Mother's children by their initials.

and then again from age three to four, and X.B. had lived with her from birth to eight months. Mother also claimed that both children resided with her from March 2020 to March 2021, until her visitation was withheld when she told the maternal grandparents that she was filing for custody and reporting them for fraud.

{¶ 6} Grandmother testified that in early 2020, when she and maternal grandfather separated, he was no longer available to help with the children. The children had primarily resided with her since then and had visited maternal grandfather every other weekend. Grandmother is a teacher and was working remotely during the COVID-19 pandemic. Mother offered to watch the children during the school day while Grandmother worked remotely, and Grandmother agreed. Grandmother still provided financial support for the children's care but allowed Mother to have "open" visitation during that time because she was displaying improved stability. Grandmother testified that the children stayed overnight with Mother during the school week, but that Grandmother picked the children up to take them to school each morning and then dropped them back off to Mother each day after school. Grandmother also stated that the children spent weekends with her during that time. Grandmother believed that she and Mother were working together to raise the children, but Mother apparently thought that Grandmother was returning the children to her permanently.

{¶ 7} In early 2021, Mother took her children to the hospital and alleged that Grandmother had abandoned and abused them and had not seen them in a year. The hospital notified Grandmother, as she was the children's legal custodian, and Grandmother retrieved the children from the hospital. Also, around that time, J.B.'s

teacher at school notified Grandmother that J.B. appeared distressed and tired during class. According to Grandmother, Mother's stability had deteriorated, and she was frequently texting "abusive" texts to Grandmother. At that point, Grandmother, maternal grandfather, and the children's father were concerned about the children's safety, and Grandmother decided that Mother needed a break from having the children in her care; as a result, Grandmother took the children back to her house and away from Mother around March 2021.

{¶ 8} Kimiria Screws was initially assigned as a caseworker at MCCS to investigate Mother's allegations of abuse of the children while in Grandmother's care. At the hearing, Screws testified that she met with Mother, who reported that she believed the children were not safe in Grandmother's house and were being physically and sexually abused. Screws testified that Mother alluded to various individuals who came into Grandmother's home but was unable to provide any details or timeframes of any incidents. Screws also testified that Mother stated that she planned to continue calling and filing abuse claims until she got her children back. Screws did not believe that the maternal grandparents' divorce had been detrimental to the children and believed that the children should remain in Grandmother's custody.

{¶ 9} Regina Howell was assigned as the caseworker to investigate Mother's abuse allegations after Screws left MCCS. At the hearing, Howell expressed concerns about Mother's live-in boyfriend, because he was a substantiated perpetrator in a physical abuse case involving his own infant child and had only supervised parenting time with his own children. Howell asserted that, because Mother's children were not the boyfriend's

children, there was an increased risk for abuse. Howell had also visited the children while they were in Grandmother's care and did not have any concerns regarding their care or hygiene. Howell stated that MCCS's position was that the children should remain in the legal custody of Grandmother and that Mother should have supervised visitation.

{¶ 10} J.B. participated in a forensic interview following Mother's abuse allegations. J.B. reported that she was told by someone that there had been an incident of a man touching her between the ages of zero and five but that she was unable to remember any details of the incident or who told her that it had occurred.

{¶ 11} As of the date of the hearing, Mother's allegations of abuse against Grandmother had not been substantiated. Following Grandmother's removal of the children from Mother's care in 2021, she had not allowed Mother to have "open" visitation because of Mother's hostility and accusations of abuse. Grandmother had allowed Mother to have supervised visitation one day per week for two hours; however, Mother claimed that she had also had unsupervised overnight visits with the children facilitated by maternal grandfather.

{¶ 12} On December 5, 2022, the magistrate granted Grandmother's motion and denied Mother's motions. Grandmother was named the sole legal custodian of the children, Mother was granted supervised parenting time at a designated location, and maternal grandfather was granted visitation as determined by Grandmother.

{¶ 13} Mother filed initial and supplemental objections to the magistrate's decision. Mother objected to the following findings of fact: that the children had been primarily living with Grandmother since they were removed from Mother's care in September 2018; that

Grandmother had been the primary caregiver during the relevant time periods; that Grandmother had worked with Mother to expand her parenting time since 2019; that maternal grandparents and Mother had been essentially co-parenting while maternal grandparents provided financial support for the children; that Mother's allegations against maternal grandparents had been investigated by law enforcement and MCCS; that Mother's untreated mental health remained a substantial barrier for effective parenting; and that returning the children to Mother's care would place them at significant risk of harm.

{¶ 14} On August 21, 2023, the trial court overruled Mother's objections and granted sole legal custody of the children to Grandmother. After consideration of the relevant factors and of Grandmother's and Mother's respective requests to be named the sole legal custodian of the children, the trial court found that there had been a change in circumstances, namely that the maternal grandparents who had been sharing legal custody of the children had divorced. The trial court found that the children's needs were met in Grandmother's home, that Mother lacked mental and emotional stability, and that Mother had ceased undergoing mental health treatment and taking medication for her mental disorders. The court concluded that, notwithstanding the change in circumstances, Mother had not demonstrated that she was able to provide a safe, stable, and permanent home for the children; thus, granting legal custody to Grandmother was in the children's best interest. The trial court further found that Mother's parenting time should take place in a supervised setting based on the recommendations of MCCS representatives and the guardian ad litem and the children's best interest.

{¶ 15} Mother timely appealed.

## II.  Assignments of Error

{¶ 16} Mother's two assignments of error are interrelated; therefore, we will consider them together.   Her assignments of error state:

THE GRANTING OF LEGAL CUSTODY SOLELY TO MATERNAL GRANDMOTHER WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

THE COURT ERRED IN NOT DETERMINING THERE WAS A CHANGE IN CIRCUMSTANCES REGARDING MATERNAL GRANDMOTHER AND MATERNAL GRANDFATHER'S DIVORCE.

{¶ 17} "R.C. 2151.353(F)(1) and (2) and R.C. 2151.42(A) and (B) govern the modification or termination of dispositional orders involving abused, neglected, or dependent children." (Citations omitted.)  *In re I.E.*, 2d Dist. Montgomery No. 28646, 2020-Ohio-3477, ¶ 10. "R.C. 2151.353(F)(1) grants the juvenile court continuing jurisdiction over any child for whom the court had entered an order of disposition, and R.C. 2151.353(F)(2) allows any party (other than a parent whose parental rights have been terminated) to 'request the court to modify or terminate any order of disposition.' " *Id.*

{¶ 18}  "A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, *that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child*." (Emphasis

added.) R.C. 2151.42(B). "[I]n determining whether to return the child to the child's parent, the court must consider the best interest of the child." *In re I.E.* at ¶ 11, citing R.C. 2151.42(A).

{¶ 19} Neither R.C. 2151.42, which governs the modification or termination of a dispositional order, nor R.C. 3109.04(E), which addresses the modification of a prior decree allocating parental rights, defines the meaning of "change in circumstances." With respect to R.C. 3109.04(B), "Ohio courts have held the phrase pertains to 'an event, occurrence, or situation which has a material and adverse effect upon the child.' " *In re A.P.*, 2d Dist. Montgomery No. 28023, 2019-Ohio-139, ¶ 23, quoting *Pierson v. Gorrell*, 12th Dist. Butler No. CA 2011-11-216, 2012-Ohio-3878, ¶ 13. "In order to warrant the abrupt disruption of the child's home life, the change in circumstances must be one 'of substance, not a slight or inconsequential change.' " *Pierson* at ¶ 13, quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

{¶ 20} "R.C. 2151.42(A) does not identify particular factors that a court should consider in determining whether to terminate or modify a dispositional order. However, courts have been guided by the best-interest factors in R.C. 2151.414(D)(1), which are applicable to a motion for permanent custody." *In re I.E.* at ¶ 27, citing *In re C.D.Y.,* 8th Dist. Cuyahoga No. 108355, 2019-Ohio-4987, ¶ 11. The factors in R.C. 2151.414(D)(1) include:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child * * * ;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 21} "Courts have also looked to the best-interest factors in R.C. 3109.04(F)(1), which is applicable to the allocation of parental rights in domestic relations matters." *In re I.E.* at ¶ 28, citing *In re C.D.Y.* at ¶ 12. That section provides the following non-exhaustive list of factors to consider: (a) the wishes of the child's parents; (b) the wishes and concerns of the child; (c) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to the child's home, school, and community; (e) the mental and physical health of all persons involved in the situation; (f) the parent more likely to honor and facilitate court-approved parenting time rights or visitation; (g) whether either parent has failed to make all child support payments; (h) whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other

parent's right to parenting time in accordance with an order of the court; and (j) whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 22} We review a trial court's determination regarding a change of circumstances for an abuse of discretion. *In re A.S.*, 2d Dist. Montgomery No. 27156, 2016-Ohio-7622, ¶ 12. We also apply an abuse of discretion standard "when reviewing a trial court's decision on a motion for legal custody."[2] *In re Z.C.*, 2d Dist. Montgomery No. 29616, 2023-Ohio-963, ¶ 35, citing *In re L.H.*, 2d Dist. Montgomery No. 29119, 2021-Ohio-3521, ¶ 21. To find an abuse of discretion, we must find that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 23} Mother argues that there was no expert testimony indicating that Mother was incapable of properly caring for her children because of her mental health, and thus the trial court's grant of legal custody to Grandmother based on Mother's mental health

---

[2] Notably, the Supreme Court of Ohio recently addressed the proper standard to be applied to review of permanent custody decisions. *In re Z.C.*, Ohio Slip Opinion No. 2023-Ohio-4703, __ N.E.3d __, ¶ 1. (The Supreme Court case is unrelated to the cited Second District case, *In re Z.C.,* 2d Dist. Montgomery No. 29616, 2023-Ohio-963.) The Supreme Court held that "the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties." *Id.* at ¶ 11. Most cases subsequently citing *In re Z.C.* have involved permanent custody. *E.g., In re E.C.*, 6th Dist. Lucas No. L-23-1217, 2024-Ohio-281, ¶ 71. However, in the one case that did not, the Eleventh District Court of Appeals referenced *In re Z.C.* in a footnote but applied an abuse of discretion standard for purposes of reviewing a grant of legal custody. *Matter of I.G.C.*, 11th Dist. Portage No. 2023-P-0026, 2024-Ohio-145, ¶ 15 and fn. 2. In light of the lower burden of proof in such cases, i.e., a preponderance of the evidence, this was appropriate. Accordingly, in situations like the present, where legal custody rather than permanent custody is at issue, we will continue to apply an abuse of discretion standard.

status was not supported by sufficient evidence. In support of her argument, Mother cites *In re K.K.*, 2d Dist. Darke No. 2023-CA-2, 2023-Ohio-2083, in which the trial court's judgment at the adjudicatory stage was reversed because we agreed with the father that the dependency adjudications had not been supported by sufficient evidence.

{¶ 24} However, we note that this appeal did not arise from the adjudicatory stage of this case. Here, the children had been previously adjudicated dependent, and maternal grandparents had been granted legal custody in April 2019. Any errors based on the sufficiency of the evidence that Mother might have appealed as a result of the trial court's original award of legal custody to the maternal grandparents are not before us in this appeal. Indeed, "[t]he purpose of requiring a finding of a change in circumstances is to prevent a constant relitigation of issues that have already been determined by the trial court. * * * Therefore, the modification must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order." *Brammer v. Brammer*, 194 Ohio App.3d 240, 2011-Ohio-2610, 955 N.E.2d 453, ¶ 17 (3d Dist.), citing R.C. 3109.04(E)(1)(a).

{¶ 25} Mother also argues that the trial court erred in determining that the maternal grandparents' divorce was not a change in circumstances. Specifically, Mother contends that the maternal grandparents' divorce created a change in circumstances for the children that warranted the return of legal custody to her. Mother further asserts that the trial court failed to inquire as to the effect of the grandparents' divorce on the children, constituting an abuse of discretion. We disagree.

{¶ 26} In order to modify custody where legal custody has already been granted,

the trial court must determine that there was a substantial change in circumstances with regard to the children or the person with legal custody and must do so in accordance with the best interest factors. In this case, the trial court found that there had, in fact, been a change in circumstances, because of the maternal grandparents' divorce, but it concluded that granting sole legal custody to Grandmother was still in the children's best interest. In granting sole legal custody to Grandmother, the trial court explained that Mother had a history of various mental health disorders dating back to her childhood, she no longer engaged in mental health therapy, and she had stopped taking medication at her own discretion. The trial court pointed out that the MCCS caseworkers had expressed concerns regarding Mother's emotional stability and mental health, and they supported having the children remain with Grandmother. Further, the MCCS caseworkers were concerned about Mother's boyfriend, who resided with her, as he had been the perpetrator of a substantiated physical abuse allegation against his own infant child. The trial court noted that the guardian ad litem additionally recommended that Grandmother be designated as the children's sole legal custodian. The trial court concluded that Mother had historically lacked mental and emotional stability and had not demonstrated that she was able to provide a safe, stable, and permanent home for the children, and, thus, granting sole legal custody to Grandmother was in the children's best interest.

{¶ 27} While Mother argues that there was no expert testimony demonstrating that she was incapable of properly caring for her children because of her mental health conditions, no expert testimony was required. Moreover, Mother could have presented expert testimony herself but did not do so, and the trial court was free to consider the

evidence presented. The trial court considered relevant factors in determining the best interest of the children, including: the interaction and interrelationship of the children with Mother and Grandmother; the custodial history of the children; the wishes of Mother and Grandmother regarding the children's care; the mental and physical health of all persons involved in the situation; and the substantiated claim of physical abuse perpetrated by Mother's live-in boyfriend against his own infant child. Under the circumstances presented, we cannot say that the trial court abused its discretion in granting legal custody to Grandmother and finding that, although there had been a change in circumstances, it was still in the children's best interest that Grandmother be granted sole legal custody.

{¶ 28} Mother's first and second assignments of error are overruled.

### III.    Conclusion

{¶ 29} Having overruled Mother's assignments of error, the judgments of the trial court will be affirmed.

. . . . . . . . . . . . .


WELBAUM, J. and TUCKER, J., concur.