[Cite as *Steele v. Steele*, 2021-Ohio-3697.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| CHARLES R. STEELE | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29141 |
| | : | |
| v. | : | Trial Court Case No. 2005-DR-864 |
| | : | |
| BOBBI J. STEELE nka MALOCU | : | (Appeal from Common Pleas |
| | : | Court – Domestic Relations Division) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 15th day of October, 2021.

. . . . . . . . . . .

BRIAN A. SOMMERS, Atty. Reg. No. 0072821, 10532 Success Lane, Dayton, Ohio
45458
    Attorney for Plaintiff-Appellee

H. STEVEN HOBBS, Atty. Reg. No. 0018453, 199 N. Commerce Street, Lewisburg, Ohio
45338
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Bobbi J. Steele, nka Malocu (Malocu),[1] appeals from a judgment of the Montgomery County Court of Common Pleas, Domestic Relations Division. The judgment overruled her objections and adopted the magistrate's decision to deny her motion to terminate plaintiff-appellee Charles R. Steele's award of interim custody and her motion to vacate pursuant to Civ.R. 60(B). Malocu filed a timely notice of appeal on May 21, 2021.

{¶ 2} The parties were married on November 8, 2003, in Eaton, Ohio. One child, M.S., was born of the parties' union in April 2004. The parties were divorced on August 3, 2007. As part of the divorce, the parties entered into a shared parenting plan with respect to the custody and care of M.S. On May 26, 2011, the trial court terminated the shared parenting plan, designating Malocu as the custodian and residential parent for M.S. Steele was awarded a modified standard order of parenting time.

{¶ 3} On August 18, 2018, Steele filed a motion for change of custody, alleging that a change of circumstances had occurred which necessitated that M.S. be placed in his custody. Steele also filed a motion for contempt alleging that Malocu had systematically denied him parenting time with M.S. On October 29, 2018, the trial court appointed a guardian ad litem (GAL) to represent the child.

{¶ 4} On January 23, 2019, Malocu filed a motion for reunification counseling. Additionally, on March 25, 2019, Malocu filed a motion to dismiss one section of Steele's multi-branch motion for change of custody. On August 15, 2019, Steele filed a motion for interim custody and a motion to require counseling. On August 29, 2019, Malocu filed

---

[1] The record is inconsistent as to the spelling of Malocu's first name - Bobbie or Bobbi – and it is unclear to us which spelling is correct.

a motion for modification of parenting time.

{¶ 5} A hearing on the motions filed by the parties was held on June 27, September 5, and December 9, 2019. On May 11, 2020, the magistrate issued a decision finding that it was in M.S.'s best interest that Steele be granted interim custody and that he be named the residential parent. The magistrate overruled Steele's motion for a finding of contempt against Malocu and Malocu's motion for a modification of parenting time. The magistrate also found, based upon the GAL's suggestion, that Malocu should have no contact with M.S. for the first 30 days of Steele's having custody of the child. Lastly, the magistrate awarded Malocu parenting time pursuant to the standard order.

{¶ 6} On May 15, 2020, Malocu filed a motion to set aside the magistrate's decision and interim order. On May 21, 2020, Malocu filed objections to the magistrate's decision, as well as a motion to restrain Steele from changing medical care and school enrollment. On June 5, 2020, the trial court overruled Malocu's motion to set aside the magistrate's decision and interim order and her objections to the magistrate's decision.

{¶ 7} The magistrate extended the order granting interim custody to Steele in entries filed on June 9 and July 7, 2020. On August 6, 2020, the magistrate further extended the interim order of custody. Notably, the entry was captioned as " a nunc pro tunc to August 5, 2020," meaning that it was effective on the earlier date, August 5.

{¶ 8} On August 14, 2020, Malocu filed a motion to terminate Steele's interim custody and a motion to vacate pursuant to Civ.R. 60(B). On August 17, 2020, Steele filed a motion for ex parte temporary custody of M.S. and a motion for a pickup order; these motions were granted on August 18 and August 21, 2020, respectively. On September 3, 2020, Malocu also filed a motion for an in camera review, a motion to

dismiss Steele's motion for reallocation of parental rights, and a motion requesting a telephone conference with the trial court. A hearing was held before the magistrate on Malocu's motions on September 3 and September 9, 2020.

{¶ 9} On October 13, 2020, the magistrate issued a decision recommending the following: 1) designating Steele as the custodial and residential parent of M.S.; and 2) denying Malocu's motion to terminate interim custody, motion to vacate pursuant to Civ.R. 60(B), motion for in camera review, motion to dismiss Steele's motion for reallocation of parental rights, and a motion requesting a telephone conference with the trial court. Malocu filed objections to the magistrate's decision on October 23, 2020 and supplemental objections on December 21, 2020. On January 8, 2021, Steele filed a memorandum in opposition to Malocu's objections. On May 17, 2021, the trial court overruled Malocu's objections and adopted the magistrate's decision in its entirety.

{¶ 10} It is from this decision that Malocu now appeals.

{¶ 11} Malocu's first assignment of error is as follows:

THE TRIAL COURT ERRED BY FAILING TO COMPLY WITH OHIO RULES OF CIVIL PROCEDURE RULE 53, MONT. D.R. RULE 4.17(C) AND ERRONEOUSLY ISSUING A NUNC PRO TUNC ENTRY.

{¶ 12} In her first assignment, Malocu contends that the trial court erred when it did not comply with Civ.R. 53 and Mont. D.R. Rule 4.17 in granting Steele an interim order of custody beyond the 28-day limit stated in Civ.R. 53(D)(4)(e)(ii). Malocu argues that the trial court also erred when it filed a nunc pro tunc order to correct an error in the interim order filed on August 6, 2020. Finally, Malocu argues that the trial court failed to comply with Mont. D.R. Rule 4.17 when it granted Steele's motion for ex parte custody of M.S.

on August 18, 2020.

{¶ 13} Civ.R. 53(D)(4)(e)(ii) provides that:

The court may enter an interim order on the basis of a magistrate's decision without waiting for or ruling on timely objections by the parties where immediate relief is justified. The timely filing of objections does not stay the execution of an interim order, but an interim order shall not extend more than twenty-eight days from the date of entry, subject to extension by the court in increments of twenty-eight additional days for good cause shown.

{¶ 14} As previously stated, Malocu argues that the trial court erred in failing to comply with Civ.R. 53, because it granted Steele an interim order of custody beyond the 28-day limit stated in that rule and used a nunc pro tunc order on August 6, 2020 to correct the error in the interim order. Malocu also argues that the trial court failed to comply with Mont. D.R. Rule 4.17 when it granted Steele's motion for ex parte custody of M.S. on August 18, 2020. Conversely, Steele argues that any issues regarding the interim orders awarded to Steele by the trial court, including the ex parte order of custody, are moot, because such orders terminated when the trial court entered its judgment.

{¶ 15} In *Schutz v. Schutz,* 2017-Ohio-695, 85 N.E.3d 481 (2d Dist.), we stated the following:

Courts have refused to address errors pertaining to the entry of interim orders, finding any error moot, because such orders terminate when the trial court enters final judgment. *See Nolan v. Nolan*, 4th Dist. Scioto No. 11CA3444, 2012-Ohio-3736, ¶ 19; *In re Guardianship of Smith*, 2d Dist.

Clark No. 2011-CA-09, 2011-Ohio-6496, ¶ 20; *Carter v. Carter*, 3d Dist. Wyandot No. 16-99-02, 1999 WL 955909, *5 (Oct. 20, 1999). We agree with the cited cases * * *.

*Id.* at ¶ 86.

{¶ 16} Also applicable is the case law finding such errors essentially harmless in the absence of any demonstrable prejudice. *N.W. v. M.W.*, 8th Dist. Cuyahoga No. 107503, 2019-Ohio-1775, ¶ 42; *Denier v. Carnes-Denier*, 2017-Ohio-334, 77 N.E.3d 588, ¶ 44 (12th Dist.).

{¶ 17} Here, the trial court entered a final judgment on May 17, 2021, overruling Malocu's objections and adopting the magistrate's decision in its entirety; the judgment designated Steele as the custodial and residential parent of M.S. and denied Malocu's various motions. Once a final judgment was filed, any issues with respect to the interim custody orders and the ex parte custody order became moot. In accordance with our holding in *Schutz*, we find that Malocu's first assignment of error is overruled as moot.

{¶ 18} Malocu's second assignment of error is as follows:

THE TRIAL COURT ERRED BY FAILING TO USE THE 'BEST INTEREST FACTORS' AND FINDING A CHANGE OF CIRCUMSTANCES WHERE IT WAS NOT WARRANTED, AS ESTABLISHED IN R.C. 3109.04.

{¶ 19} In this assignment, Malocu contends that the trial court abused its discretion when it found that a change of circumstances had occurred which warranted awarding custody of M.S. to Steele. Malocu also argues that the trial court erred when it failed to consider all of the best interest factors set out in R.C. 3109.04(F)(1)(a)-(j) before awarding custody to Steele.

{¶ 20} " 'The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.' A reviewing court will not overturn a custody determination unless the trial court has acted in a manner that is arbitrary, unreasonable, or capricious." *Haynes v. Haynes*, 2d Dist. Montgomery No. 16992, 1998 WL 865040, *2 (Nov. 13, 1998). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable." *Jones v. Jones*, 2019-Ohio-2355, 138 N.E.3d 634, ¶ 16 (2d Dist.).

{¶ 21} R.C. 3109.04(E)(1)(a) governs the modification of a prior decree allocating parental rights and provides, in relevant part:

The Court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree * * * unless the modification is in the best interest of the child * * * and one of the following applies: * * * (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change

of environment to the child.

{¶ 22} Thus, before a court may modify a prior allocation of parental rights and responsibilities, it must consider: (1) whether a change of circumstances occurred, (2) whether modification is in the child's best interest, and (3) whether the benefits that result from the change outweigh any harm. *Clark v. Smith*, 130 Ohio App.3d 648, 653, 720 N.E.2d 973 (3d Dist.1998). The record must support each of these findings or the modification of child custody is contrary to law. *Davis v. Flickinger,* 77 Ohio St.3d 415, 417, 674 N.E.2d 1159 (1997). Additionally, R.C. 3109.04(E)(1)(a) creates a rebuttable presumption that retaining the residential parent designated by the prior decree is in the child's best interest. *Meyer v. Anderson*, 2d Dist. Miami No. 96-CA-32, 1997 WL 189383, *6 (April 18, 1997).

**Change of Circumstance**

{¶ 23} The threshold question in this case is whether Steele demonstrated a change of circumstances. Although R.C. 3109.04 does not define a "change of circumstances," Ohio courts have held the phrase pertains to "an event, occurrence, or situation which has a material and adverse effect upon the child." *Pierson v. Gorrell*, 12th Dist. Butler No. CA 2011-11-216, 2012-Ohio-3878, ¶ 13. "In order to warrant the abrupt disruption of the child's home life, the change of circumstances must be one 'of substance, not a slight or inconsequential change.' " *Id.*, quoting *Flickinger* at 418. In determining whether a "change" has occurred, a trial judge must have wide latitude in considering all the evidence, and the court's decision must not be reversed absent an abuse of discretion. *Id.* at ¶ 10.

{¶ 24} "The clear intent of that statute is to spare children from a constant tug of

war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a 'better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment." *Echols v. Echols*, 2d Dist. Clark No. 2020-CA-45, 2021-Ohio-969, ¶ 27, quoting *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (10th Dist.1982).

{¶ 25} "If a custodial parent repeatedly interferes with the non-custodial parent's visitation, this may amount to a change of circumstances under R.C. 3109.04, since it affects the best interests of the child." *Sabins v. Sabins*, 2d Dist. Montgomery No. 18616, 2001 WL 427399, *2 (April 27, 2001), citing *Clark v. Smith*, 130 Ohio App.3d 648, 655, 720 N.E.2d 973 (3d Dist.1998); *Mitchell v. Mitchell*, 126 Ohio App.3d 500, 505, 710 N.E.2d 793 (2d Dist.1998); *Beekman v. Beekman*, 96 Ohio App.3d 783, 789, 645 N.E.2d 1332 (4th Dist.1994); and *Holm v. Smilowitz*, 83 Ohio App.3d 757, 773, 615 N.E.2d 1047 (4th Dist.1992). We have also held that a change of circumstances may occur by a custodial parent continuing to interfere with visitation when the trial court had previously warned the parent to cease. *Id.,* citing *Pathan v. Pathan,* 2d Dist. Montgomery No. 18254, 2000 WL 1299529 (Sept. 15, 2000) (holding that a mother's continuous interference with a father's visitation amounted to a "change" of circumstances even though the interference had been an issue during previous hearings before the court which had resulted in the court not changing the custody arrangement).

{¶ 26} In this case, the trial court found that a change of circumstances had occurred through Malocu's continued interference with Steele's parenting time with M.S. The trial court noted that since the issuance of the parties final divorce decree in August

2007, Malocu and Steele had argued several times over parenting time with M.S., as evidenced by the numerous motions and orders filed in 2011, 2012, 2013, 2014, 2017, 2018, 2019, and 2020. As previously stated, Steele filed his motion for a change of custody in 2018. Although several review hearings were held and Malocu was provided with many opportunities for her to demonstrate compliance with the trial court's orders, Malocu still consistently failed to abide by the M.S.'s visitation schedule with Steele.

{¶ 27} Significantly, despite being entitled to extended summer parenting time, Steele did not have any visitation with M.S. during the summers of 2018 and 2019. Furthermore, after Steele was granted interim custody of M.S., Malocu was ordered to have no contact with M.S. for 30 days, but Malocu admitted that she failed to comply with the no-contact rule by continuing to contact M.S. on her cellphone and attending M.S.'s dentist appointment. Additionally, at the conclusion of her parenting time in August 2020, Malocu did not return M.S. to Steele for approximately two weeks. When Steele traveled to Malocu's house to take custody of M.S., Malocu refused to hand over M.S while the minor child hid in the house. In order to get custody of M.S., Steele had to file a motion and obtain a pickup order directing the local police to assist Steele in his efforts. As a result of Malocu's refusal to comply with the trial court's visitation orders, M.S. missed ten days of school.

{¶ 28} The record also establishes that Malocu has consistently interfered with Steele's ability to develop a meaningful and caring relationship with M.S. Specifically, in one instance when M.S. was staying with Steele at his residence in Indiana, Malocu contacted Henry County (Indiana) Children's Services and made allegations that M.S. was not being properly cared for at Steele's residence. Malocu then called Henry County

Children's Services again a few days later and repeated her allegations. After an investigation by Children's Services, the case was closed; Steele's residence was found to be safe and appropriate, and Malocu's allegations were found to be baseless.

{¶ 29} Furthermore, the record establishes that Malocu refused to take any responsibility for the denial of Steele's visitation with M.S. Rather, Malocu informed the GAL that the visitation issues were Steele's fault and that the trial court should not force M.S. to have a relationship with him. Tr. 144. Accordingly, the trial court reasonably concluded that the evidence was sufficient to establish a change of circumstances, necessitating a modification of the parties' custody arrangement. No abuse of discretion is established.

### Best Interest Determination

{¶ 30} Malocu also argues that the trial court failed to consider all of the best interest factors set out in R.C. 3109.04(F)(1)(a)-(j) before awarding legal custody to Steele, and that the trial court placed too much emphasis on Malocu's refusal to comply with court-ordered visitation regarding M.S. Malocu contends that the trial court failed to properly consider M.S.'s expressed desire to live with Malocu and to not have overnight visitation with Steele.

{¶ 31} As previously stated, R.C. 3109.04(E)(1)(a) requires trial courts to find that modification of a prior decree allocating parental rights and responsibilities "is necessary to serve the best interests of the child." R.C. 3109.04(F) states that, in determining the best interest of a child, "the court shall consider all relevant factors, including but not limited to" various factors set forth in R.C. 3109.04(F)(1)(a)-(j), which are:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; * * *

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's

right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶ 32} It is undisputed that M.S. expressed a desire to live with Malocu; however, the record establishes that M.S. had "not expressed any real concern" about living with Steele. Trial Court Decision, p. 6. Notably, M.S.'s wish to live with Malocu was only one factor to be taken into account when performing a best interest analysis. Additionally, the record establishes that, after being granted interim custody, Steele went to great lengths to acclimate M.S. to her new surroundings in Indiana. Steele encouraged M.S. to be involved in community activities and introduced her to children her age who also lived in Indiana. The record establishes that Malocu attempted to undermine the efforts of Steele in this regard by telling M.S. that the interim order "was temporary" and that she did not need to make friends or get used to living in Indiana because she would be "coming home" soon. Tr. 156-157.

{¶ 33} Another area in which Malocu attempted to undermine Steele's efforts to parent M.S. related to her cellphone usage. Specifically, the trial court found that M.S.'s cellphone use was a concern because of the sexually explicit content and conversations found by Steele in her cellphone on applications such as Instagram and Snapchat. At the time Steele became aware of the inappropriate content on M.S.'s cellphone, she was 16 years old. Steele made efforts to monitor M.S.'s phone content as well as the amount of time she spent on her phone. To that end, Steele installed a monitoring application on M.S.'s cellphone that alerted him when she was engaging in inappropriate conversations with strangers. Steele also spoke with M.S.'s counselor regarding how to

address the situation when M.S. engaged in inappropriate communications. Steele took M.S.'s cellphone away when she used it inappropriately.

{¶ 34} Conversely, Malocu did not take M.S.'s cellphone use seriously, and her supervision of M.S. in that regard was much more lax. The trial court found that, despite being aware of M.S.'s inappropriate postings and conversations, Malocu did not monitor M.S.'s phone usage. Malocu informed the GAL that she trusted M.S. regarding her cellphone usage and was not concerned about the sexually explicit messages. Malocu also was not concerned that M.S.'s cellphone reflected over 17 hours of use in one day. The trial court found that Malocu "refuses to accept there is an issue" and blames Steele "for anything that has occurred." Trial Court Decision, p. 7. Rather than working with Steele to address the issue regarding M.S.'s inappropriate cellphone use, Malocu, on one occasion, supplied M.S. with a "secret" phone after Steele had taken her cellphone away. The trial court correctly noted that Malocu's decision to undermine Steele's concerns regarding M.S.'s inappropriate cellphone use was detrimental to M.S. and put her safety at risk by allowing her continued unsupervised access to sexually explicit conversations with strangers.

{¶ 35} As previously stated, the record establishes that Malocu has consistently interfered with Steele's ability to develop a meaningful and caring relationship with M.S. Malocu has interfered with and outright denied Steele visitation with M.S. Since being granted interim custody of M.S., Steele had helped and encouraged her to make friends in Indiana and to integrate herself into the community. Steele had ensured that M.S. had appropriate medical care in Indiana. With respect to M.S.'s particularized educational needs, the trial court found that, after enrolling her in school in Indiana, both Steele and

Malocu had met with school personnel to discuss M.S.'s individualized education program (IEP) in order to implement a new IEP for M.S. similar to the program she had had in Ohio. The record does not contain any evidence to establish that M.S.'s education in Indiana was inadequate to meet her needs or was in any way inferior to the education she received in Ohio. Upon review, we find that the trial court relied upon the appropriate best interest factors and did not err in finding that it was in M.S.'s best interest to be placed in Steele's custody.

{¶ 36} Lastly, the record supports the trial court's finding that the harm likely to be caused in placing M.S. in Steele's custody was outweighed by the advantages of the change of environment. Specifically, Malocu had failed to promote any type of relationship between Steele and M.S. The record clearly shows that Malocu had consistently attempted to divide Steele and M.S., which had prevented the formation of a meaningful father-daughter relationship. Through her behavior and actions, Malocu established that she was unwilling to facilitate a positive relationship between Steele and M.S. Accordingly, the trial court did not abuse its discretion by awarding Steele custody of M.S. as the only way he would receive proper visitation with her and build a caring and positive relationship. Therefore, the importance of the award of custody to Steele outweighed any potential harm to M.S. that might be caused by this change.

{¶ 37} Malocu's second assignment of error is overruled.

{¶ 38} Both of Malocu's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and HALL, J., concur.

Copies sent to:

Brian A. Sommers
H. Steven Hobbs
Hon. Denise L. Cross