[Cite as *S.P. v. M.G.*, 2023-Ohio-2084.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| [S.P.] | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-57 |
| | : | |
| v. | : | Trial Court Case No. 2017-DM-0098 |
| | : | |
| [M.G.] | : | (Appeal from Common Pleas Court- |
| | : | Domestic Relations) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 23, 2023

. . . . . . . . . . .

BRIAN A. SOMMERS, Attorney for Appellee

ANNE HARVEY, Attorney for Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} M.G. ("Father") appeals from a judgment of the Greene County Court of Common Pleas, Division of Domestic Relations, which dismissed his motion to reallocate parental rights and his alternate motion to modify parenting time. For the reasons set forth below, we affirm in part, reverse in part, and remand to the trial court for further proceedings.

## I. Facts and Course of the Proceedings

{¶ 2} M.G. and S.P. ("Mother") were married in 2012. Their marriage was dissolved by a judgment entry filed in August 2017. At that time, the parties' only child was two years old. The judgment adopted an agreed shared parenting plan under which each parent was designated as legal custodian and residential parent, with Mother designated as the residential parent for school purposes.

{¶ 3} Approximately two years later, Mother filed a motion requesting an emergency order for supervised parenting time for Father. She also sought to terminate the shared parenting agreement and to be appointed sole custodian of the child. In October 2020, the trial court terminated shared parenting, designated Mother as the legal custodian and residential parent, and granted Father the standard order of parenting time. Father appealed, and on May 21, 2021, we affirmed the trial court's judgment.[1]

{¶ 4} On October 5, 2021, Father filed a motion to reallocate parental rights and for shared parenting. Alternatively, the motion sought to modify parenting time. Mother filed a motion to dismiss.

{¶ 5} The trial court conducted a hearing on November 17, 2021. At the start of the hearing, the trial court noted that the parties had agreed to address Mother's motion to dismiss Father's motion, which involved the "question of whether or not there's been a change of circumstances such that the Court would then move on to the second question that would before the Court of best interest." Tr. p. 5. The trial court subsequently

---

[1] An in-depth summary of the events leading to the motion and its resolution by the trial court is set forth in *S.P. v. M.G.*, 2d Dist. Greene No. 2020-CA-42, 2021-Ohio-1744.

concluded that Father had failed to establish any change of circumstances. As such, the court granted Mother's motion to dismiss.

{¶ 6} Father appeals.

## II. Parenting Time

{¶ 7} Father's first assignment of error states:

THE TRIAL COURT ERRED IN DISMISSING FATHER'S MOTION TO MODIFY PARENTING TIME

{¶ 8} Father contends that the trial court improperly dismissed his motion to modify parenting time. He argues that the court's decision erroneously rested upon its finding that there had been no change in circumstances to justify a modification.

{¶ 9} We review the trial court's judgment on modification to parenting time for an abuse of discretion. *Quint v. Lomakoski*, 167 Ohio App.3d 124, 2006-Ohio-3041, 854 N.E.2d 225 (2d Dist.). An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary or unconscionable. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 10} "Where one parent is the legal custodian of [a child], modifications to parenting time are governed by R.C. 3109.051." *Veach v. Adams*, 2022-Ohio-4031, 203 N.E.3d 1, ¶ 11 (1st Dist.), citing *Bohannon v. Lewis*, 1st Dist. Hamilton Nos. C-210316, C-210322, 2022-Ohio-2398, citing *Hartman v. Hartman*, 8th Dist. Cuyahoga No. 107251, 2019-Ohio-1637, ¶ 16, and *Braatz v. Braatz*, 85 Ohio St.3d 40, 706 N.E.2d 1218 (1999), paragraph one of the syllabus. *Accord Flynn v. Flynn*, 10th Dist. Franklin No. 02AP-801,

2003-Ohio-990, ¶ 10; *Schoenfelt v. Schoenfelt*, 2d Dist. Montgomery No. 23497, 2009-Ohio-6594, ¶ 10. When modifying parenting time, the trial court must consider the factors set forth in R.C. 3109.051(D) and determine, using its sound discretion, the schedule that is in the best interest of the child. *Pruitt v. Pruitt*, 2d Dist. Montgomery No. 29331, 2022-Ohio-2058, ¶ 85; *Martin v. Martin*, 179 Ohio App.3d 805, 2008-Ohio-6336, 903 N.E.2d 1243, ¶ 31 (2d Dist.), citing *Braatz*. In determining whether to modify parenting time, a change in circumstances is not required. *Braatz* at paragraph two of the syllabus.

{¶ 11} In its judgment entry, the trial court stated: "Because the Court finds no change of circumstance, it is unnecessary to determine the best interest of the parties' child or the motion to modify parenting time." Because the trial court explicitly stated that it denied Father's alternate motion to modify parenting time based upon its finding that Father had failed to demonstrate a change in circumstances, we must conclude the trial court erred by applying the incorrect legal standard. This constituted an abuse of discretion resulting in prejudice to Father.

{¶ 12} Accordingly, the first assignment of error is sustained.

### III.    Change of Circumstances

{¶ 13} The second assignment of error asserted by Father states:

MOTHER'S BEHAVIOR CONSTITUTES A CHANGE OF CIRCUMSTANCES REQUIRING REMAND FOR EVALUATION OF E.G.'S BEST INTERESTS

{¶ 14} Father contends that the trial court erred in failing to find a change of circumstances warranting a change of custody. Specifically, he claims the evidence showed that, since the prior decree allocating parental rights: (1) Mother and her fiancé began cohabitating; (2) the child had been removed from therapy; (3) the child's medical condition had changed; (4) the child's school had changed; (5) Mother had failed to facilitate "Father as a parent;" and (6) the child's attitude toward Father had changed.

{¶ 15} R.C. 3109.04(E)(1)(a) governs the modification of an existing decree allocating parental rights and responsibilities. R.C. 3109.04(E)(1)(a) provides, in pertinent part, as follows:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

{¶ 16} Although not defined by statute, the phrase "change of circumstances" has been held to pertain to an event, occurrence, or situation which has a material effect upon the child. *In re I.E.*, 2d Dist. Montgomery No. 28646, 2020-Ohio-3477, ¶ 15. "A change of circumstances must be one of substance, not slight or inconsequential, to justify modifying a prior custody order." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.26 1159 (1997); *Wiram v. Wiram*, 2d Dist. Clark No. 2017-CA-32, 2017-Ohio-7436, ¶ 5.

{¶ 17} "The clear intent of that statute is to spare children from a constant tug of war between their parents who would file a motion for change of custody each time the parent out of custody thought he or she could provide the children a 'better' environment. The statute is an attempt to provide some stability to the custodial status of the children, even though the parent out of custody may be able to prove that he or she can provide a better environment." *Steele v. Steele*, 2d Dist. Montgomery No. 29141, 2021-Ohio-3697, ¶ 24, citing *Echols v. Echols*, 2d Dist. Clark No. 2020-CA-45, 2021-Ohio-969, ¶ 27, quoting *Wyss v. Wyss*, 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (10th Dist.1982).

{¶ 18} "In determining whether a change of circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." *Davis*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, at paragraph two of the syllabus. Accordingly, we review that determination for an abuse of discretion. *Id.* at paragraph one of the syllabus.

{¶ 19} We begin with the assertion that Mother's cohabitation with her fiancé constituted a change in circumstances. The evidence showed Mother and her fiancé had been dating since March 2018 and that E.G. had had regular interactions with the fiancé during that time.[2] Mother testified that her fiancé moved into the home with E.G. and her in October 2020, during the COVID pandemic, in order to minimize exposure to the virus.

{¶ 20} There was no evidence that the fiancé posed a danger to E.G. or that he was of bad character. There was no evidence that the fiancé had acted in a manner to

---

[2] It appears on this record that the trial court was not aware at the time of the first motion for reallocation of parental rights that Mother was involved with her now fiancé.

alienate E.G. from Father or to create hostility toward Father. Indeed, Father had been in Mother's home on numerous occasions while the fiancé was present, and no evidence was presented to indicate that any problems arose from those interactions. Thus, based upon this record, we cannot say that the trial court abused its discretion in determining that the cohabitation between the mother and her fiancé did not constitute a change of circumstances sufficient to warrant a change in custody.

{¶ 21} We next address Father's claim that the discontinuation of the child's therapy constituted a change in circumstances. Father claims Mother violated the trial court's order by removing E.G. from therapy.

{¶ 22} The child began therapy with Frances Duncan at some point during the pendency of the prior custody litigation. During the COVID pandemic, therapy sessions were conducted on-line. The child's last visit with Duncan was in December 2020. According to Mother's testimony, Duncan "moved her practice" and was "working in Florida now"; Mother testified that, after the move, it was "not easy to get appointments." Mother further testified that E.G. was doing well and was happy and that, based upon those conclusions, she discontinued the therapy.

{¶ 23} There is no evidence in the record that E.G. required therapy after the point at which Mother discontinued the sessions. There is also no evidence that Mother's decision to stop the sessions was made for any reasons other than the change in Duncan's practice coupled with Mother's belief that E.G. was doing well. Moreover, all along, Father had been of the opinion that E.G. did not need therapy. Notwithstanding the court-ordered therapy, the trial court was in the best position to determine whether the

cessation of therapy had had a material adverse effect on E.G. Thus, we cannot say the court abused its discretion by determining that the cessation of therapy did not constitute a change of circumstances sufficient to warrant a change in custody.

**{¶ 24}** Next, Father alleges that he demonstrated a change in E.G.'s medical condition which also constituted a change of circumstances. Relevant to this issue, the prior custody litigation involved allegations that Father had sexually abused E.G. Those allegations arose following repeated incidents of the child's exhibiting vaginal redness and irritation after having parenting time with Father. The child went through extensive medical testing to determine the cause of the irritation, including allergy testing. Ultimately, no evidence was adduced to support a finding that the vaginal issues were caused by sexual abuse.

**{¶ 25}** Father contends the issues with vaginal redness and irritation ceased immediately following Mother's designation as legal custodian and residential parent. He argues that this demonstrated a change of circumstances because it proved that Mother had fabricated the abuse allegations.

**{¶ 26}** We find no support in the record for Father's assertions. The only testimony regarding the issue was Mother's statement that she had not sought further medical care for the vaginal redness and irritation since the prior custody decision making her the legal custodian. There was no evidence adduced to support a finding that the vaginal issues had resolved. Importantly, the record indicates that both Mother and Father initially attempted to change various products they used on the child in an attempt to cut out any possible allergens. In other words, the record does not demonstrate that

the child did not have vaginal issues, but just that the evidence did not support a finding that Father was abusing the child. Thus, we find no change in circumstances in this regard, and we cannot accept Father's contention that this evidence proved that Mother had fabricated the abuse claims.

{¶ 27} Father also asserts that a change of circumstances occurred because Mother had enrolled E.G. in a private school.

{¶ 28} Both parents testified that E.G. was very intelligent. E.G. attended the Jewish Community Center for preschool and Bellbrook schools for kindergarten and first grade. Her first-grade year was conducted on-line due to the COVID pandemic. Thereafter, Mother decided to enroll E.G. at the Miami Valley School.

{¶ 29} At the time of the hearing on Father's motion, E.G. was attending second grade at the Miami Valley School. There was no evidence that she was having trouble adjusting to the change or that her grades had suffered. Indeed, she was doing well academically and had adjusted to the change. Further, she continued to live in the same home; thus, she had not moved away from her friends in Bellbrook. Given that E.G. learned on-line for an entire school year, any claimed change of circumstances was diminished, as she did not have a normal in-person school experience for first grade. The trial court did not abuse its discretion in determining that the change in schools did not constitute a change in circumstances that warranted a change in custody.

{¶ 30} Father next alleged that Mother's "failure to facilitate Father as parent" constituted a change in circumstances. First, Father complains that he had called to speak to E.G. during times when Mother and E.G. were in the car, and Mother had utilized

Bluetooth technology to place the calls on speaker in the vehicle. He also asserted there had been times when he and E.G. communicated via FaceTime and the sound was muted. According to Father, these instances indicated that Mother was interfering with his right to communicate with the child. Father also complained that Mother did not provide him with E.G.'s homework or her school reading book. Finally, Father complained that Mother had asked him to make sure that E.G. showered during Father's Wednesday parenting time. Father argued that this was inconsistent with Mother's prior claims that he had sexually abused the child.

{¶ 31} Mother admitted to using Bluetooth technology during calls from Father while she was driving; she testified that it was simply a safe way for her to accept the call and permit E.G., who sits in the backseat, to speak with Father. Father questions the credibility of Mother's safety claims, but he failed to present evidence to rebut it. Further, there was no evidence to indicate that Mother was responsible for any muting of the sound during FaceTime calls between Father and E.G. Indeed, from Father's testimony, it appeared that E.G. had been in possession of the phone during these conversations. Next, Mother testified that she did not believe the court order required her to provide Father with the homework E.G. completed during Mother's parenting time. She also testified that she did not provide the reading book because E.G. had completed the assignment by the time Father exercised his parenting time. Finally, Mother testified that E.G. had experienced problems with daytime sleepiness following her Wednesday visits with Father because she had to bathe after returning from Father's and was therefore late getting to bed. The parties had resolved this issue by agreeing to adjust the Wednesday

parenting times.

{¶ 32} Again, the trial court was in the best position to assess the credibility of the testimony regarding these issues. The trial court did not abuse its discretion in concluding that the evidence did not demonstrate that Mother had "failed to facilitate Father as parent" and that the above-cited complaints by Father did not constitute a change in circumstances.

{¶ 33} Father also asserts there had been a breakdown in communication between Mother and him which constituted a change in circumstances. However, Father admitted that Mother kept him advised of E.G.'s medical appointments, swim classes, dance classes, tennis classes, gymnastic classes, and Girl Scout activities and gave him information about E.G.'s parent-teacher conferences during second grade. There was evidence that Father received a school folder for E.G. on a regular basis and that Mother had provided Father with various other school-related information. The trial court reasonably concluded that there had not been a breakdown in communications between the parents that it would constitute a change in circumstances.

{¶ 34} Finally, Father asserts the child's attitude and behavior toward him has changed. He testified that E.G. gives him "the cold shoulder" when he attends events that Mother also attends. He also testified that E.G. had "growled" at him during a medical appointment. Father claimed that E.G. takes several minutes to "warm up" to him during parenting time. However, he admitted that after the initial few minutes together, E.G. behaves normally. No evidence was presented to indicate the child's behavior was instigated by Mother or the fiancé. Thus, the trial court did not abuse its

discretion in failing to find that this claim constituted a change in circumstances.

**{¶ 35}** Based upon the record before us, we find no abuse of discretion in the trial court's determination that Father had failed to present evidence of a change in circumstances sufficient to warrant a change in custody.

**{¶ 36}** Accordingly, the second assignment of error is overruled.

## IV.    Conclusion

**{¶ 37}** Father's first assignment of error being sustained, the judgment of the trial court is reversed insofar as it dismissed Father's motion to modify visitation; the matter is remanded for further proceedings solely on the issue of whether a modification of parenting time is in the best interest of E.G.   The judgment is affirmed in all other respects.

. . . . . . . . . . . . .

WELBAUM, P.J. and HUFFMAN, J., concur.