[Cite as *In re K.L.*, 2023-Ohio-3910.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

IN THE MATTER OF K.L. AND K.R.    :
                                  :
                                  :    C.A. No. 2023-CA-12
                                  :
                                  :    Trial Court Case Nos. 21630212;
                                  :    21630213
                                  :
                                  :    (Appeal from Common Pleas Court-
                                  :    Juvenile Division)
                                  :

. . . . . . . . . . .

O P I N I O N

Rendered on October 27, 2023

. . . . . . . . . . .

EDWARD A. FRIZZELL, Attorney for Appellant, Mother

JAY M. LOPEZ, Attorney for Appellee, Father

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Mother appeals from a judgment of the Miami County Common Pleas Court, Juvenile Division, sustaining Father's motion for reallocation of parental rights and awarding Father legal custody of their minor child. Mother contends the trial court erred in finding a change in circumstances sufficient to support a change in custody absent any harm to the child. Mother also claims the trial court erred in ordering a change in custody

without fully considering all statutory best-interest factors. She asserts that the trial court exclusively focused on factors involving her denial of parenting time.

{¶ 2} We conclude that the trial court did not err in finding a change in circumstances based on Mother's relocation to Cleveland and the effect the move had on the parties' child. The trial court also properly considered the best-interest factors. The trial court acted within its discretion in weighing those factors, and its decision to award Father legal custody was not against the weight of the evidence. Accordingly, the trial court's judgment will be affirmed.

## I. Facts and Course of Proceedings

{¶ 3} Mother and Father are the parents of K.L., who was born in 2014. Mother has a second child, K.R., who was born in 2016. Father is not the parent of K.R., and the child's biological father was not involved in the proceedings below.

{¶ 4} In November 2016, Father was found to be an unsuitable parent for K.L. due to a history of domestic violence and his recent release from prison on a domestic-violence charge involving K.L and Mother. At that time, Mother also was found to be an unsuitable parent for K.L. and K.R. due to her imprisonment on felony charges. As a result, the children's maternal grandparents were designated as their legal custodians.

{¶ 5} Following Mother's release from prison, the trial court granted her parenting time with both children in February 2020. Thereafter, the trial court granted Father parenting time with K.L. in March 2021. Three months later, Mother and the maternal grandparents agreed to Mother obtaining legal custody of both children effective August 1, 2021 with Father retaining parenting time with K.L and the maternal grandparents

retaining substantial visitation rights with both children. Immediately after obtaining legal custody, however, Mother terminated all contact with Father and the maternal grandparents. In early August 2021, she decided to move to Cleveland with her new fiancé without informing the trial court, Father, or the maternal grandparents. The record reflects that Mother decided to move because the maternal grandparents had filed a motion against her, Father had been showing up at her house to see K.L., and the maternal grandparents had arrived at her house accompanied by police officers.

{¶ 6} Despite Mother's covert relocation and attempts to cut off communication with Father and the maternal grandparents, they eventually traced her to Cleveland. In December 2021, Father and the maternal grandparents filed contempt motions against Mother. Father also filed a motion for reallocation of parental rights, seeking to be designated legal custodian of K.L., and the maternal grandparents moved for legal custody of both children.

{¶ 7} In June 2022, Mother was found in contempt for denying parenting time and visitation to Father and the maternal grandparents. Mother received a suspended jail sentence and was ordered to comply with existing parenting-time and visitation orders and to provide make-up time. Father and the maternal grandparents began receiving parenting time and visitation in July 2022, including an extended month-long visit that summer.

{¶ 8} Father's motion for reallocation of parental rights and the maternal grandparents' motion for legal custody proceeded to a two-day hearing before a magistrate on June 8, 2022 and September 2, 2022. The hearing also addressed a motion

by Mother to restrict or modify Father's parenting time and to terminate the maternal grandparents' visitation. After hearing testimony from Father, Mother, the maternal grandmother, Mother's fiancé, a guardian ad litem, and several other witnesses, a magistrate filed a lengthy decision sustaining Father's motion for legal custody of K.L. and overruling the maternal grandparents' motion for legal custody. The effect of the ruling was that Father gained legal custody of K.L., and Mother retained legal custody of her other child, K.R. Finally, the magistrate allowed the maternal grandparents to keep their visitation rights but ordered them to meet Mother halfway to exchange K.R.

{¶ 9} Mother filed timely objections and supplemental objections to the magistrate's decision. In her supplemental objections, Mother acknowledged that the magistrate's decision contained "a near perfect and inarguable recitation of the facts and circumstances" presented during the two-day hearing. Mother also admitted moving to Cleveland without notice and effectively "ghosting" Father and the maternal grandparents. She asserted, however, that the magistrate's analysis had focused almost exclusively on her withholding of parenting time and visitation while not giving sufficient weight to evidence showing that both children were thriving in her care in Cleveland. In essence, Mother argued that the magistrate's decision represented a punitive response to her disregard of parenting-time and visitation orders rather than a reasoned analysis of the applicable statutory factors.

{¶ 10} In an April 3, 2023 judgment entry, the trial court overruled Mother's objections and awarded Father legal custody of K.L. while allowing Mother to retain legal custody of K.R. and allowing the maternal grandparents to retain visitation rights. After

conducting an independent review, the trial court found a change in circumstances predicated on Mother moving and withholding parenting time and visitation. The trial court also concluded that awarding Father legal custody of K.L. was in the child's best interest and that any harm caused by this change in custody would be outweighed by the advantages to the child. Mother timely appealed, advancing two assignments of error.

## II. Change in Circumstances

{¶ 11} Mother's first assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IT FOUND A CHANGE IN CIRCUMSTANCES BUT NO SPECIFIC HARM TO THE CHILD, AS REQUIRED BY R.C. 3109.04(E)(1).

{¶ 12} The reallocation of parental rights is governed by R.C. 3109.04(E)(1)(a), which provides:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the

child and one of the following applies:

* * *

(iii) The harm likely to be caused by a change of environment is outweighed

by the advantages of the change of environment to the child.

R.C. 3109.04(E)(1)(a).

{¶ 13} Although not statutorily defined, a change in circumstances "has been held to pertain to an event, occurrence, or situation which has a material effect upon the child." *S.P. v. M.G.*, 2d Dist. Greene No. 2022-CA-57, 2023-Ohio-2084, ¶ 16, citing *In re I.E.*, 2d Dist. Montgomery No. 28646, 2020-Ohio-3477, ¶ 15. Under appropriate circumstances, a custodial parent's interference with parenting time can constitute a change in circumstances for purposes of reallocating parental rights. *See, e.g., Pathan v. Pathan*, 2d Dist. Montgomery No. 18254, 2000 WL 1299529, *3 (Sept. 15, 2000). A trial court enjoys wide latitude when determining whether a sufficient change in circumstances has occurred to support a change in custody. *S.P. v. M.G.* at ¶ 18. As a result, we review that determination for an abuse of discretion. *Id.*

{¶ 14} Here the trial court found the requisite change in circumstances based on Mother's withholding of parenting time and visitation from Father and the maternal grandparents. In fact, the trial court characterized Mother's behavior as being "more than withholding behavior and noncompliance of a court order behavior." The trial court noted that Mother secretly had relocated to Cleveland almost immediately after obtaining custody, attempted to conceal her whereabouts, and "ghosted" Father and the maternal grandparents. The trial court observed that Mother had engaged in this conduct despite

court orders allowing Father and the maternal grandparents to see the children and despite the fact that the maternal grandparents had raised the children for several years. The trial court also noted Mother's hearing testimony that she did not know when she would comply with parenting-time and visitation orders because of her children's extracurricular activities in Cleveland and the cost of transporting them to Miami County to see Father and the maternal grandparents.

{¶ 15} On appeal, Mother cites this court's opinion in *Echols v. Echols*, 2d Dist. Clark No. 2020-CA-45, 2021-Ohio-969, for the proposition that a denial of parenting time does not constitute a change in circumstances sufficient to warrant a custody change, particularly where the denial of parenting time results in no harm to children who otherwise are thriving in the custodial parent's care. The appellant-mother in *Echols* had sought a change in custody based on the father's alleged denial of parenting time on Thanksgiving and Easter. On review, we noted that there had been a disagreement over parenting-time rights on Thanksgiving and that the father had not deprived the mother of any parenting time on Easter. We noted too that the father actually had given the mother extra parenting time and other contact that was not required by court order. Under these circumstances, we found no change in circumstances based on interference with parenting time to support a change in custody.

{¶ 16} Even a cursory reading of *Echols* reveals that it bears no similarity to the present case. Unlike *Echols*, there was no disagreement about Father's right to parenting time or the maternal grandparents' right to visitation. Nor was Mother's interference with parenting time and visitation a discreet incident. Almost immediately after obtaining legal

custody on August 1, 2021, Mother cut off all contact with Father and the maternal grandparents. On August 8, 2021, someone at Mother's house shut the door in Father's face when he arrived to pick up K.L. That same month, Mother and the children fled to Cleveland, where she attempted to conceal her whereabouts. After Father located her, she continued to impede parenting time and visitation, citing the children's extracurricular-activity schedules and the self-imposed expense of transporting them to Miami County to see Father and the maternal grandparents.

**{¶ 17}** Contrary to Mother's argument about her move to Cleveland having no adverse effect on the children, the magistrate explicitly found that Mother did cause harm, and the trial court adopted this finding. *See* Magistrate's Decision at 18 (Nov. 16, 2022); Judgment Entry at 8 (Apr. 3, 2023). Although the magistrate did not specify the nature of the harm, we reasonably can infer from the magistrate's decision that the adverse effect involved being uprooted from Miami County and, in particular, being unable to see maternal grandparents, who had raised both children for several years while Mother served time in prison. The trial court pointed out that K.L. had done well in Father's home and that the child enjoyed a "very strong relationship" with the maternal grandparents. The trial court explained that its concerns "extend[ed] beyond contemptuous conduct" insofar as Mother's move and denial of parenting time and visitation effectively had "cancelled the children from Father and grandparents."

**{¶ 18}** On the record before us, we cannot say the trial court abused its discretion in finding the requisite change in circumstances based on Mother's denial of parenting time and visitation, secretly moving to Cleveland, and continuing to impede the ability of

Father to see K.L. and the maternal grandparents to see both K.L. and K.R. As relevant to K.L., who is the subject of Mother's appeal, the trial court reasonably found that Mother's move had a material effect upon the child, particularly the child's budding relationship with Father (which would have been even stronger but for Mother's termination of all contact upon obtaining legal custody) and the child's long-term close relationship with the maternal grandparents. Accordingly, Mother's first assignment of error is overruled.

### III. Best-Interest Factors

{¶ 19} Mother's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IT ORDERED A CHANGE IN CUSTODY WITHOUT APPROPRIATE AND ACCURATE CONSIDERATION OF ALL FACTORS LISTED IN R.C. 3109.04(F)(1) AND RELYING SOLELY ON THOSE FACTORS INVOLVING DENIAL OF PARENTING TIME.

{¶ 20} Mother contends the trial court did not fully consider the statutory best-interest factors when awarding Father legal custody of K.L. She argues that the trial court focused exclusively on factors relevant to parenting time while ignoring evidence that both children were thriving in her care in Cleveland. Mother also cites case law from various appellate districts to support the general propositions that split-custody decisions are disfavored and that a custodial parent may relocate without losing custody.

{¶ 21} The applicable best-interest factors are found in R.C. 3109.04(F)(1), which

identifies the following non-exclusive considerations to guide trial courts in custody determinations:

(a) the wishes of the child's parents; (b) the wishes and concerns of the child; (c) the child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (d) the child's adjustment to the child's home, school, and community; (e) the mental and physical health of all persons involved in the situation; (f) the parent more likely to honor and facilitate court-approved parenting time rights or visitation; (g) whether either parent has failed to make all child support payments; (h) whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; (i) whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court; and (j) whether either parent has established a residence, or is planning to establish a residence, outside this state.

*Sanchez v. Casiano*, 2d Dist. Montgomery No. 29415, 2022-Ohio-4179, ¶ 16, citing R.C. 3109.04(F)(1).

**{¶ 22}** No single best-interest factor is controlling, and the weight to be given to each factor is within a trial court's discretion. *In re Z.C.*, 2d Dist. Montgomery No. 29616,

2023-Ohio-963, ¶ 34.

{¶ 23} Here the magistrate and the trial court properly considered the statutory best-interest factors. With regard to Father's motion for legal custody of K.L., the trial court made explicit findings on every factor. *See* Judgment Entry at 11-15 (Apr. 3, 2023). Contrary to Mother's argument, the trial court did not consider only evidence related to her withholding of parenting time. The trial court recognized that both parents wanted legal custody and that K.L. had not been interviewed. It then noted the guardian ad litem's recommendation of legal custody to Father based on (1) concerns that Mother would not obey any future parenting-time order and (2) Father's demonstrated ability to work well with the maternal grandparents to ensure that K.L. and K.R. continued to see each other when the grandparents had visitation.

{¶ 24} With regard to K.L.'s interaction and interrelationship with others, the trial court recognized that the child was doing well in Mother's home in Cleveland. The trial court noted that K.L. had enjoyed a 30-day visit with Father, while acknowledging the guardian ad litem's concerns about K.L. and K.R. being separated. The trial court then recognized K.L.'s strong bond with the maternal grandparents, who had raised the child for several years prior to Mother obtaining legal custody and cutting off all contact. Finally, the trial court noted that Father is married and that K.L. has a step-sibling and a half-sibling in Father's home whereas Mother has no relatives in Cleveland.

{¶ 25} Concerning K.L.'s adjustment to home, school, and community, the trial court again recognized that the child was doing well in Cleveland and had been involved in activities there. With regard to the next factor, the trial court noted that both parents

possessed medical-marijuana cards and admitted smoking daily. As for honoring visitation, the trial court found that Mother was unlikely to comply with any future parenting-time order, whereas Father likely would comply. The trial court also recognized that Father owed the maternal grandparents child support and that the record did not reveal whether Mother had an outstanding balance due. The trial court additionally acknowledged that Father had been convicted of domestic violence several years earlier and that both parents had served prison time. The trial court noted, however, that Father had "gotten his life more together" following his release from prison. This finding was supported by evidence that Father is married and employed earning $20 per hour while successfully helping to raise two children other than K.L. The trial court then found that Mother willfully had withheld parenting time, which is an enumerated best-interest factor. The trial court additionally made a finding that neither party intended to move out of Ohio. It also considered the parties' incomes and made a finding that the maternal grandparents will ensure that K.L. and K.R. continue to have regular contact.

{¶ 26} After analyzing each best-interest factor, the trial court made a final finding that any harm likely to be caused by awarding Father legal custody of K.L. was outweighed by advantages to the child. The trial court stated: "The advantages to [K.L. are] that he will be able to have a relationship with both parents as well as have contact with his half-sister. Based on Mother's behavior, she has no problem taking off and just setting up residence somewhere else taking [K.L.] away from a familiar environment." Judgment Entry at 14-15 (Apr. 3, 2023).

{¶ 27} Our review of the trial court's decision refutes Mother's contention that it

focused exclusively on factors relevant to parenting time while ignoring evidence that both children were doing well in her care. In our view, the trial court fully and fairly assessed each best-interest factor. The trial court's decision to award Father legal custody was supported by the evidence and was not an abuse of discretion.

{¶ 28} In reaching this conclusion, we recognize that Ohio law does not prohibit a custodial parent from relocating out of the area. But Mother's move to Cleveland was a relevant consideration. We also do not disagree with Mother's claim that making split-custody awards of siblings should not be done lightly. In the present case, however, the trial court and the guardian ad litem both recognized the significance of separating K.L. and K.R. In addition to its other findings, the trial court ultimately determined that awarding Father legal custody of K.L. would enable the two children to continue seeing each other while also allowing K.L. to maintain a relationship with Mother, Father, and the maternal grandparents. Conversely, the trial court determined that awarding Mother legal custody of K.L. likely would result in Mother continuing to deny or impede parenting time and visitation by Father and the maternal grandparents. While that arrangement would have kept K.L. and K.R. together with Mother in Cleveland, in the trial court's view it likely would have deprived K.L. of a meaningful relationship with Father and the maternal grandparents. The trial court did not abuse its discretion in evaluating these competing interests or in awarding Father legal custody. Accordingly, Mother's second assignment of error is overruled.

## IV. Conclusion

{¶ 29} Having overruled both assignments of error, we affirm the judgment of the

Miami County Common Pleas Court, Juvenile Division.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.